Wilde, J.
Several points have been made in this case, some oí which may be easily disposed of.
The first is an objection to the form of the action. It has been *112 contended that assumpsit cannot be maintained, and that the plaintiff’s remedy is either by action of covenant on the indenture of copartnership, or by action of account.
As to an action of covenant, there is no ground on which it could be maintained; for the present action is founded on matter collateral to the covenants. The only *one which seems, even prima facie, to relate to the present subject of controversy, is that which limits the right of the contracting parties, of withdrawing a portion of the joint stock, without mutual consent. But consent must be inferred from the facts in the case; both parties concurring in withdrawing from the joint stock a larger amount than was permitted by the indenture without such consent. Besides, the principal sum demanded originated in mercantile dealings between the house of Harrison &f Wilby and another trading company, in which Harrison and a third person were partners. These dealings were wholly independent of the covenants in the deed ; and as to all other demands in controversy, there appears to be a balance in favor of the defendant.
This last consideration seems to be sufficient to show that an action of account would not lie. But if it might be maintained, it by no means follows that assumpsit will not; for generally, where an action of account lies, an action of assumpsit on a promise to account may be also maintained. The law has always been so understood in this state, as sufficiently appears by the cases cited in the argument. (1) We find little said in the English books as to the form of action, in cases of controversies between partners, in the courts of common law ; redress being commonly sought in chancery. But we have no doubt that, here, an action of assumpsit will lie between partners on a promise to account.
Another objection that has been made is, that an action does not lie against the defendant, as administrator, for the plaintiff’s expenses in collecting the debts and managing the concerns of the copartnership, since the decease of Harrison. And this is certainly true. But these expenses may be allowed by making a deduction from the amount of property withdrawn by the plaintiff from the partnership stock, (a) And in like manner may be deducted the
amount of the joint debts paid by him since his partner’s decease, beyond the amount of debts collected by * him *113 In this way justice may be done, without violating any rule of law.
These objections of form being thus disposed of, we pass to the consideration of the principal question — namely, whether the plaintiff can by law recover against the administrator of his deceased partner for the property withdrawn by him from the joint stock; the partnership concerns remaining unsettled, so that the referees have not been able to strike a final balance, and the estate of the intestate being insolvent.
This question is certainly entangled with some difficulties ; but of the equity of the case there can be no doubt; or, if it were less obvious, it must be considered as established by the referees, whose determination must, in this respect, be deemed conclusive. The objection, then, is that, by the rules of law, the plaintiff is not entitled to recover in any form of action; or, in other words, that he is without remedy. If this be so, we must declare it, however unwilling we may be to believe the law deserving of such a reproach.
It has been argued that a partner cannot maintain assumpsit against a copartner on an implied promise, except for a liquidated balance; either one struck by the parties, or where it is the result of a final adjustment of the partnership concerns. This position we think well maintained by the cases cited ; (2) and perhaps the English authorities will be found to go so far as to require an express promise in all actions of assumpsit between partners in relation to their partnership concerns. There can be no inconvenience in such a rule, where the parties have a convenient remedy, in chancery, to vindicate their rights. (a) But to require an express promise, where no such remedy is provided, would enable one partner to possess himself of the partnership property, and to set his copartners at defiance. The defendant’s counsel, therefore, have well admitted that an action will lie, after the dissolution of a copartner *114 ship, to recover a final balance due from one partner * to another, on the ground of an implied promise. And we think the law is clearly so. The partnership, in this case, was dissolved by the death of Harrison; although his liability to the payment of the company’s debts is extended to his administrator, by the statute of 1799, c. 57.
The effect of this statute, it has been contended, is such as to place the administrator and the surviving partner upon the same footing as the original partners were, so far as it respects the right of action for any intermediate balances which may be due, from time to time, inter se, before the final settlement of the partnership concerns. And we think that, in all cases of solvency, such must be the necessary operation of the statute. For, each party being liable to be sued by the joint creditors, these balances may be daily shifting; and all the evils are to be apprehended, in allowing them to be recovered on the ground of an implied promise, which would probably follow the introduction of a similar principle in respect to partners.
But when the estate of the deceased partner is insolvent, the claim of the surviving partner stands on ground widely different, and must be determined on other considerations. For, in such cases, all claims must be made before the commissioners; and no remedy is given to a creditor unless he thus assert his claim while the commission remains in force. This imposes upon the surviving partner the necessity of causing a balance to be struck, according to the existing state of the accounts at the time he presents his claim ; and this may fairly be considered as in the nature of a suit for the recovery of a final balance — for, as it respects the surviving partner, it is final. The estate being distributed among the creditors, he can have no remedy for any future payments, unless, he should discover some estate not accounted for by the administrator. On this ground, the present action may be supported, as a step towards a final adjustment, and which can in no other way be effected consistently with the manifest rights of the parties, and of all others who are interested in Harrison’s estate, (a)
* There is another view of the cause already intimated, according to which the plaintiff’s claim may be supported on legal principles, although the operation given to the statute for the distribution of insolvent estates might be considered questionable.
*115 The principal sum reported by the referees became due to the late firm of Harrison &f Wilby in the course of sundry mercantile dealings which took place between that firm and another trading company, in which Harrison and a third person (one Bennoch) were partners, and in which Wilby had no interest. Now, it has been repeatedly decided that, where several persons are partners in trade, and some of them carry on a distinct trade, and in such character deal with and become creditors of the other firm, and a joint commission of bankrupt issues, proof may be made for such debt, as if they dealt with strangers. (3)
I do not find that the propriety of these decisions has ever been drawn in question ; and they conform in principle to other decisions, by which it has been held that partners may have dealings with an individual partner, or with two or more of the partners, having their separate estates engaged in some j'oint concern, and that property may be transferred from the one house to the other. (4) In such cases, they seem to be treated in some respects as constituting corporations, the two copartnerships being considered as distinct, although one person be a common partner in both. There may, perhaps, be some difficulty, in such cases, in enforcing a contract by action. But the principal difficulty in this case is removed by the death of Harrison. On bis decease, all the joint credits survived to Wilby. He alone can maintain an action against Bennoch; and we can see no incongruity in suffering him to maintain an action, on the same contract, against the administrator of the other partner. The balance due on that contract is 19,883 dollars 94 cents, which considerably exceeds the sum claimed by the plaintiff.
We are next to consider what sum the plaintiff is entitled to recover.
*The balance of the several sums reported by the referees, if 1 am correct in my computation, is the sum of 16,185 dollars 55 cents. If all the parties were solvent, the plaintiff could claim only a moiety of this sum, or whatever his just proportion may be, according to the stipulation of the copartnership. But it is reported by the referees that the concern of Harrison Sf Wilby is probably insolvent, so that their whole credits are required to discharge their debts. The plaintiff, therefore, claims the whole sum due from Harrison’s estate, as representative of the joint creditors. And we are of opinion he is entitled to recover this sum. It is true that we cannot now say that he will, eventually, be entitled to retain the whole dividend which may be decreed *116 to be paid to him in the distribution of Harrison’s estate ; for that may be so considerable as to pay more than Harrison’s just proportion of the debts of the firm ; and this might be the case, even if the present claim should be rejected — it depending altogether on the amount to be distributed, of which we have no knowledge.
The defendant may, however, have his remedy against the plaintiff, to recover back any surplus he may have to pay beyond his just proportion. If it be objected that Wilby may be insolvent, it may, perhaps, be a sufficient answer to say that each partner, in forming the copartnership, must be considered as voluntarily sub mitting to the loss and inconvenience arising from the insolvency of the two copartners. Another reply, however, may be given. If the administrator should find that Wilby had no right to retain his whole dividend, he might decline the payment, and, if sued, might avail himself of a set-off; or, if a suit should be commenced on the administrator’s bond, he might defend himself, at least so far as to reduce the judgment to nominal damages.
After all, however, we cannot undertake to say that some injustice may not be done. Inequalities may arise, in the distribution of Harrison’s estate, between the joint and separate creditors. As the law for the distribution of insolvent * estates now is, such inequalities must often occur, They might in some measure be prevented, if provision were made for keeping separate accounts of the joint and separate estates, and for distributing them according to the rule adopted by the English courts in respect to the estates of bankrupts. Such a rule would commonly operate more justly than a general distribution.
We are aware of another difficulty, also, for which, however, there is no remedy. The plaintiff may hereafter be compelled to pay the outstanding debts, which have been represented as of considerable amount; and, after the distribution of Harrison’s estate, he can have no relief.
These are difficulties of some magnitude, which may, perhaps, hereafter be thought worthy of the attention of the legislature; but they can have no influence on the present question, which must be determined according to the existing state of the demands between the parties. These have been examined and adjusted by intelligent, referees; and as we perceive no legal obstacle to giving effect to their award, judgment must be entered accordingly, (a)

 9 Mass. Rep. 538, Brigham vs. Eveleth. —12 Mass. Rep. 34, Bond vs. Haysi Ezr.

 Vide Whittle vs. M'Farlane, Knapp, Priv. Co. Ca. 312.— Collyer on Part. 105. It is the duty of those appointed to wind up the affairs of a copartnership to do every thing for the utmost advantage of the concern; and no partner, in the performance of this business, ca.. claim to himself any partie ilar reward or compensation for his trouble.

 2 D. & E. 476, Smith vs. Barrow.—4 Esp. 382, Wilkinson vs. Frasier.— 4 Eas', 144, Hesketh vs. Blanchard & AL, Exrs. — 1 B. & P. 539, Bolton vs. Puller Al.— Cook's Bank, L. 550, 551, 538.

 Vide note to Brigham vs. Eoeleth, 9 Mass. Rep. 542, 3d ed., and note to Bond vs. Hays, 12 Mass. Rep. 36, 3d ed. Collyer, 145. — Bowell vs. Hammond, 6 B. & C. 351. — Gow. Part. 73, 74, 3d ed., and the cases there cited. — Fanning vs. Chadwick, 3 Pick. 420. — Brinley vs. Kupfer, 6 Pick. 179.—Johnson vs. Ames, 6 Pick. 330. —- Haskell vs. Adams, 7 Pick. 59. — The opinion of the Court respecting the remedies between copartners appears to have undergone some change. In Chandler & Al. vs. Chandler & Al , 4 Pick. 82, Parker, C. J., said, “ It is a known principle of the common law that an action will not lie by one partner against another, except where there lias been an adjustment of accounts and a balance struck ; so that, until the statute of 1823, there was no remedy, in this commonwealth, in the cases which must frequently occur of partnerships dissolved by death, or otherwise, without any settlement of the accounts.”

 Can this ho a just reason for allowing the surviving copartner to recover or prove before the commissioners an amount, none of which, when a final account ia taken, may be found due? Vide Johnson vs. Ames, 6 Pick. 330. — Chandler vs. Chandler, 4 Pick. 82. — Brinley vs. Kupfer, 6 Pick. 179. — Haskell vs. Adams, 7 Pick. 59.

 Cook's Bank, L. 551, and the cases there cited.

 1 B. & F., ubi supra. — 1 East, 20.

 Vide Brinley vs. Kupfer, 6 Pick. 179.— Chandler vs. Chandler, 4 Pick. 78.— Johnson vs. Ames, 6 Pick. 330. — Fanning vs. Chadwick, 3 Pick. 420. — Haskell vs Adams, 7 Pick. 59