CHARLES DEANE & another *vs.* GEORGE H. CALDWELL, administrator.

Suffolk. March 15, 1878. — July 3, 1879. COLT & SOULE, JJ., absent.

Under the Gen. Sts. *c.* 99, a lessor is entitled to prove, against the insolvent estate of a deceased lessee, for rent becoming payable by the terms of the lease, before or after the death of the lessee, up to the time that the claim is presented to the commissioners, but is not entitled to prove any claim for or on account of rent payable in the future.

The receipt of money from a third person for use and occupation does not, beyond the amount so received, affect the rights or the remedies of the lessor against the lessee or his estate on the covenants in the lease.

The surrender of leased premises by the administrator of a deceased lessee, who has occupied the premises after the death of the lessee, and its acceptance by the lessor, without any reservation of or agreement for a right to sue the administrator, or to prove against the insolvent estate of the lessee, terminates all liability of the administrator or of the estate upon the covenants of the lease.

APPEAL from the decision of commissioners upon the insolvent estate of William Caldwell deceased. Trial without a jury before

*Endicott*, J., who reported for the determination of the full court the following case:

The plaintiffs made a lease by indenture of a shop and factory in Boston to William Caldwell for the term of five years from December 15, 1874, at a yearly rent of $4000, payable quarterly. The lessee paid the rent to June 15, 1875, and died September 16, 1875. The defendant was appointed administrator of his estate, and remained in occupation of the premises until July 1, 1876, and the plaintiffs afterwards, in an action against him, recovered judgment in the sum of $1650 for his use and occupation from September 16, 1875, to July 1, 1876, and that judgment was satisfied. In July 1876, the administrator delivered the key of the shop to another person, who, after occupying a month or two, delivered the key and paid for his occupation at a reduced rent to one of the lessors, and the lessor received the key, and subsequently leased the premises at a reduced rent to another person. The judge found that there had been a surrender of the premises, by operation of law, by the giving up and acceptance of the key in August 1876, but reserved the question of the effect of such surrender, together with the other questions in the case.

On February 19, 1876, the estate of the intestate was represented insolvent, and, on February 28, the Probate Court appointed commissioners, to whom, on April 26, the plaintiffs presented these claims: 1st, for the rent due and unpaid at the time of the death of the intestate; 2d, for damages (treating the contract of lease as broken at that time) estimated at the difference between the rent reserved and the value of the lease for the rest of the term; 3d, if this claim for damages was not provable, then for the rent due to the time of the presentation of the claim to the commissioners, or for damages for loss of rent sustained up to the time of such presentation. The hearing before the commissioners was had on June 24, 1876; and the commissioners in their report, filed August 28, 1876, allowed the plaintiffs' claim for the rent to the time of the intestate's death, and disallowed all claims for subsequent rent or damages.

*R. D. Smith*, for the plaintiffs.

*J. W. Keith*, for the defendant.

GRAY, C. J.   Before the day at which rent is covenanted to be paid, it is in no sense a debt; it is neither *debitum* nor *solvendum ;* for if the lessee is evicted before that day, it never becomes payable. *Bordman* v. *Osborn,* 23 Pick. 295.   It is not within the provision of a bankrupt act, allowing "uncertain or contingent demands" to be proved against the estate of a bankrupt; because it is not an existing demand the cause of action on which depends upon a contingency, but the very existence of the demand depends upon a contingency.   U. S. St. August 19, 1841, § 5.   *Riggin* v. *Magwire,* 15 Wall. 549.   *French* v. *Morse,* 2 Gray, 111, 115.   *Savory* v. *Stocking,* 4 Cush. 607.   *Bosler* v. *Kuhn,* 8 W. & S. 183.   *Prentiss* v. *Kingsley,* 10 Penn. St. 120.   *Stinemets* v. *Ainslie,* 4 Denio, 573.   *South Staffordshire Railway* v. *Burnside,* 5 Exch. 129, 139.   The recent bankrupt act of the United States did not alter this rule, except by allowing, in accordance with the modern English bankrupt acts, an apportionment of rent to the day of the adjudication of bankruptcy.   U. S. Rev. Sts. §§ 5067–5072.   *Ex parte Houghton,* 1 Lowell, 554.   *In re Webb,* 6 Bankr. Reg. 302.   *Treadwell* v. *Marden,* 123 Mass. 390. Robson on Bankruptcy, (3d ed.) 260.   *A fortiori* it could not be proved against the estate of a living insolvent debtor under the insolvent law of this Commonwealth, which (except in certain cases of bottomry and respondentia bonds, policies of insurance, bills of exchange and promissory notes, and sureties) allows no debts to be proved except such as are "absolutely due" at the time of the first publication of notice.   Gen. Sts. *c.* 118, § 25. *Stowell* v. *Richardson,* 3 Allen, 64.   *Lothrop* v. *Reed,* 13 Allen, 294.

In the case of a living bankrupt or insolvent, any liabilities which could not be proved against his estate are not discharged by his certificate, and may be afterwards enforced against him. But when the estate of a deceased person is insolvent, there is no debtor surviving, and any claims of creditors that do not ripen into debts which may be sued against the executor or administrator, or proved against the estate, before the final distribution of the assets, are wholly lost.

It is in view of this distinction, doubtless, that the statutes relating to the insolvent estates of deceased persons have not limited the right of proof against the estate to debts due at the

day of the representation of insolvency, or of an adjudication of bankruptcy or publication of notice at the commencement of the proceedings, or at any other date before the return of the commission; but have provided, in general terms, for the appointment of commissioners " to receive and examine all claims of creditors against the estate, and to return a list of all claims laid before them, with the sum allowed on each claim ; " and have enacted that " every creditor of an insolvent estate, who does not present his claim for allowance in the manner herein prescribed, shall be barred from recovering the same, unless further assets of the deceased come to the hands of the executor or administrator after the decree of distribution." Gen. Sts. *c.* 99, §§ 2, 21. Rev. Sts. *c.* 68, §§ 2, 20. St. 1784, *c.* 2.

It is not doubted that debts depending upon no contingency, though not payable until a future day, may be proved before the commissioners. *Eaton* v. *Whitaker*, 6 Pick. 465. *Haverhill Loan & Fund Association* v. *Cronin*, 4 Allen, 141. And it has always been held that any contingent liabilities, arising out of contracts of the deceased, which become absolute debts at any time before being presented to the commissioners, may be allowed, although those which do not become absolute debts until after the return of the commission and the distribution of the estate are necessarily cut off.

In *Wilby* v. *Phinney*, 15 Mass. 116, for instance, it was held that, in this Commonwealth, an action of assumpsit, on the ground of an implied promise, would lie to recover a final balance due from one partner to another; and therefore that, when a partnership was dissolved by the death of one partner, and his estate was represented insolvent, the surviving partner, having no remedy unless he asserted his claim while the commission remained in force, was obliged to strike a balance, according to the existing state of the accounts, at the time of presenting his claim, which might fairly be considered as in the nature of a suit for the recovery of a final balance, because, as respected him, it was final; and consequently that he might prove before the commission for the amount of the balance so struck in his favor, but not on account of still outstanding debts of the partnership.

So in *Harding* v. *Smith*, 11 Pick. 478, where the deceased had given a bond to the plaintiff to pay a certain proportion of the

expenses of supporting a third person, who was still living, and
for whose support expenses were constantly arising, for which
the plaintiff was chargeable, it was assumed, without dispute,
that the commissioners acted rightly in making an allowance to
the plaintiff for such support up to the close of their commission;
and it was adjudged that no proof could be made for future ex-
penses.    And in *Savage* v. *Winchester*, 15 Gray, 453, it was held
that a widow, who had joined with her husband in a mortgage
of her separate estate to secure a debt of his, which she had paid
since his death for the purpose of exonerating her estate, had a
valid legal claim, provable against his estate, which had been
represented insolvent.    The rule established by these decisions
is clearly recognized (at least as to debts which become abso-
lute within the period of the special statute of limitations) in
the Gen. Sts. *c*. 99, §§ 5, 6.    And see *Cummings* v. *Thompson*,
7 Met. 132; *Thompson* v. *Thompson*, 9 Price, 464; *Read* v. *Blunt*,
5 Sim. 567.

It follows, that in this case the plaintiff was entitled to prove
for the rent which became payable by the terms of the lease, be-
fore or after the death of the intestate, up to the time when the
claim was presented to the commissioners; but that he was not
entitled to prove any claim for or on account of rent payable in
the future.    As regards the future rent, there has been no breach
of the covenant in the lease, that will sustain an action either
for rent or for damages.    *Daniels* v. *Newton*, 114 Mass. 530.

It would seem, that the only debts which can be proved against
the insolvent estate of a deceased person are legal, as distin-
guished from equitable debts.    Under the St. of 1784, *c*. 2, if
either party was dissatisfied with the decision of the commission-
ers, the claim was tried in an action at common law; and, by the
later statutes, the appeal from their decision is to be either to
this court or to the Superior Court, according to the amount of
the claim; "and in either case it shall be tried and determined
in like manner as if an action had been brought therefor by the
supposed creditor against the executor or administrator;" "the
supposed creditor shall file a statement in writing of his claim,
setting forth briefly and distinctly all the material facts which
would be necessary in a declaration for the same cause of action;
and like proceedings shall be thereupon had in the pleadings,

trial and determination of the cause, as in an action at law prosecuted in the usual manner; except that no execution shall be awarded against the executor or administrator for a debt found due to the claimant." Gen. Sts. *c.* 99, §§ 8, 10. Rev. Sts. *c.* 68, §§ 8, 10. *Burns* v. *Fay*, 14 Pick. 8. *Greenwood* v. *McGilvray*, 120 Mass. 516. It would be an anomaly to try an equitable claim upon a declaration and pleadings as at common law, and in the Superior Court, which has hardly any equity jurisdiction. Yet it is possible that this court might, under the Gen. Sts. *c.* 99, § 20, allow a suit in equity brought against the executor or administrator before the representation of insolvency, or even, under the general equity jurisdiction with which it is now vested by the Gen. Sts. *c.* 113, § 2, such a suit brought afterwards, to be prosecuted to judgment for the mere purpose of ascertaining the amount of the claim.

But it is unnecessary to pursue that inquiry at the present time, because a court of equity will not, in distributing assets among creditors, afford a lessor any further remedy on account of future rent than a court of law. *King* v. *Malcott*, 9 Hare, 692. And the same rule has been adhered to by the English courts of chancery, in the cases on which the plaintiffs rely, in distributing assets of a company among its creditors under the very sweeping provision of the St. of 25 & 26 Vict. *c.* 89, § 158, which enacts that, "in the event of any company being wound up under this act, all debts payable on a contingency, and all claims against the company, present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company, a just estimate being made, so far as is possible, of the value of all such debts or claims as may be subject to any contingency, or sound only in damages, or for some other reason do not bear a certain value;" although the courts, under that statute, have declined to grant an application of a company to be wound up, and its assets distributed among its stockholders, without paying or giving security for such claims. *In re Haytor Granite Co.* L. R. 1 Eq. 11, and L. R. 1 Ch. 77. *In re London & Colonial Co.* L. R. 5 Eq. 561. *In re Telegraph Construction Co.* L. R. 10 Eq. 384.

The recovery in the action against the administrator, not having been for the full amount of the rent reserved, but only for

the value of his own use and occupation, did not, beyond the satisfaction so received, affect the rights or the remedies of the lessors upon the covenants of the lease. *Inches* v. *Dickinson*, 2 Allen, 71. *Dwight* v. *Mudge*, 12 Gray, 23.

But the surrender of the lease by the administrator, and its acceptance by the lessors, having been absolute, and not qualified by any reservation of or agreement for a right to sue the administrator or prove against the estate in case of a loss occasioned by being compelled to let the premises at a reduced rent, terminated the lease and all liability upon the covenants thereof. *Randall* v. *Rich*, 11 Mass. 494. *Amory* v. *Kannoffsky*, 117 Mass. 351.

The result is, that the case is to be referred to an assessor, to ascertain, in addition to the rent payable at the death of the intestate, the amount of rent payable up to the time of the surrender, making due deduction for the sums received for use and occupation.                    *Judgment for the plaintiffs accordingly.*