## Hartford Deposit Company v. The Chemical National Bank and Eli C. Tourtelot, Receiver.

1. NATIONAL BANK—*Not Relieved of its Contract by Insolvency.*—A national bank, lessee of premises for a term of years, which during the term becomes bankrupt, is not thereby discharged from its obligation to pay rent in accordance with the terms of the lease.

Assumpsit, for a failure to pay rent. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Submitted at the March term, 1895. Reversed. Judgment entered in this court. Opinion filed April 4, 1895.

BURNHAM & BALDWIN, attorneys for appellant.

DUNCAN & GILBERT, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The Chemical National Bank of Chicago entered into a lease, dated November 18, 1892, with the appellant, the Hartford Deposit Company, of a banking office in a certain building, owned by the said Hartford Deposit Company. In accordance with its terms, the bank paid $2,500 on the delivery of said lease. The term was for a period of five years, from May 1, 1893, at an annual rental of $12,000, payable in equal monthly installments of $1,000, in advance, exclusive of and in addition to said first payment of $2,500. The bank entered into and took possession of said premises on May 1, 1893, the first day of said term, and the first installment of rent fell due and was payable on that day. This installment was not paid when due, nor had it or any part of it been paid when, on May 9, 1893, the bank became insolvent, and a national bank examiner took possession of its assets and of said premises.

On July 21st a receiver was duly appointed, and on July 27th he notified the Hartford Deposit Company of his election to terminate said lease after July 31, 1893, so far

Hartford Deposit Co. v. Chemical Nat. Bk.

as he, as receiver, was concerned.    On the same day, namely, July 27th, said receiver paid to the Hartford Deposit Company the sum of $2,709.68, which was as agreed the ratable amount of rent due for the period May 1st to July 31st, inclusive.    No other or further rent was paid under said lease by any other person or at any other time.    The premises remained vacant until May 1, 1894, when they were re-let at a reduced rental.    This suit was brought to recover damages for failure to pay rent for the period August 1, 1893, to April 31, 1894, during which the premises remained unoccupied, claimed to amount to $9,000.

The cause was submitted to the court below, without a jury, upon an agreed statement of facts, which concluded as follows:

" If, upon the foregoing facts, the court is of the opinion that the plaintiff is entitled to recover of the defendants, or either of them, judgment is to be rendered in favor of the plaintiff and against one or both of the defendants, as the case may be, said judgment to be in such form as the law may require and to be for such sum as the court shall, from the foregoing facts, determine the plaintiff to be entitled to recover.

If, on the other hand, the court is of the opinion upon the foregoing facts, the plaintiff is not entitled to recover of the defendants, or either of them, judgment is to be rendered in favor of the defendants and against the plaintiff for costs of suit."

The court found that the lessor, the appellant, was not entitled to recover against either the bank or its receiver, and gave final judgment accordingly.

The rendition of such judgment is the sole error that is assigned, and the question, as said in the brief of counsel for appellees, is simply " whether, in the case of a lease to a national banking association of a banking room for a term of years, the lessor can recover against such association, or its receiver, for rent accrued under the lease subsequent to its insolvency, and the appointment of a receiver to close up its business under the national banking laws, and after

the receiver has abandoned or surrendered up the leased property to the lessee."

We are not able to appreciate the distinction between the liability of an insolvent national bank in the hands of a receiver under the provisions of the National Bank Act, but whose charter has not been judicially, or otherwise, forfeited, and other corporations or individuals whose estates are in insolvency, with reference to their liability on contracts competently and in good faith entered into before insolvency. The bank act itself creates no such distinction, and the cases that are cited, Fidelity Safe Dep. & T. Co. v. Armstrong, 85 Fed. Rep. 567, Deane v. Caldwell, 127 Mass. 242, and White v. Knox, 111 U. S. 704, do not afford it support.

The first cited case occurred in, and was decided by the district judge for the southern district of Ohio, and was a case where default in the payment of rent did not occur until after the charter of the bank had been forfeited and the bank had passed out of existence, and had no successors who, in the eye of the law, stood in its place.

The second cited case, that in Massachusetts, was, if not controlled by the peculiar provisions of the insolvency statutes of Massachusetts, determined upon the fact found by the court—that the surrender of the lease and its acceptance by the lessor, being absolute and unqualified by the reservation of any right to sue or prove up, terminated the lease and all liability upon the covenants thereof.

The last cited case, in the United States Supreme Court, decides only that the creditor of an insolvent national bank who establishes his claim, including interest, by suit, is entitled to share in dividends on his debt upon its value only as of the day of the failure of the bank—the same day as the claims of other creditors were computed up to—in order that all claims should be paid ratably in accordance with the provisions of the National Bank Act.

The lease in question was a lawful contract and engagement for the bank to make. The first monthly installment of rent was due under it nine days before the bank sus-

pended. By its terms the default that was made by the bank in the non-payment of rent on May 1st, gave the right to the appellant to re-enter and terminate the lease. The damages were then matured and could have been at once sued for, or appellant could defer its suit, as it did, until by a re-letting of the premises the extent of damages had been made certain. That they were unliquidated did not render them contingent. The contingency, default in payment of rent—had happened. After that the damages were a mere matter of calculation.

The vacation of the premises on July 31st by the receiver, did not, it was stipulated, affect the rights of the parties.

We have had no sufficient reason presented to our attention why the appellant should not recover as his damages against the bank the rent that was reserved by the terms of the lease (during the time that the bank occupied the premises), from and after July 31, 1893, when the receiver surrendered the premises so far as he was concerned, until May 1, 1894, when appellant re-let them and therefore reverse the judgment of the court below as to the bank, and enter judgment here for the sum of $9,000 against the said appellee, the Chemical National Bank of Chicago, but affirm the judgment as to Eli C. Tourtelot, the receiver.