## In re MAHLER.

### (District Court, E. D. Michigan. November 6, 1900.)

**1. BANKRUPTCY—PROVABLE CLAIMS—RENT ACCRUING AFTER ADJUDICATION.**

Rent accruing under a lease after the lessee has been adjudicated a bankrupt, is not provable against his estate under Bankr. Act 1898, either as a fixed liability or an unliquidated claim.

**2. SAME—EFFECT ON LEASE—RESUMPTION OF POSSESSION BY LESSOR.**

Where a lease of a store building authorized a re-entry by the lessor for nonpayment of rent, but contained no provision making the lessor agent for the lessee in respect to the premises, and after the bankruptcy of the lessee and the removal of his goods by his trustee the lessor at once relet the building temporarily, and subsequently for a term of years, his action amounted to an eviction of the bankrupt, which terminated the lease.

In Bankruptcy. In the matter of the claim of Mrs. Adele C. Thompson. On case certified by referee.

Moore & Moore, for petitioner.

Dickinson, Warren & Warren, for trustee.

Jonathan Palmer, Jr., for bankrupt.

SWAN, District Judge. On October 1, 1895, the petitioning creditor made an agreement with the bankrupt to erect a four-story brick building to be used by Mahler for a retail grocery store, and to execute to him a lease of the premises for the term of five years and two months from March 1, 1896, rent payable monthly in advance at the rate of $3,600 per annum, and after February 1, 1898, at the rate of $4,000 per annum. This lease was executed by the petitioner and accepted by Mahler, who, upon the completion of the building, entered into possession, and occupied the same until January 3, 1899, when, upon his own petition, Mahler was adjudicated a bankrupt. March 11, 1899, the petitioner, Mrs. Thompson, filed a claim for rent due to January 3, 1899, the date of adjudication of bankrupt, and for repairs for which the lessee was liable under the lease, amounting together to $442.69. This claim was duly allowed, and the first dividend paid thereon. At the same time Mrs. Thompson also filed a contingent claim for $10,000, purporting to be founded upon the covenants contained in the lease executed by her to the bankrupt. The bankrupt abandoned the leased premises January 3, 1899, and has neither paid the rent which has accrued since that time nor made provision to restore the premises to their condition when he took possession. The lessor claims under the covenants of the lease the rent which has accrued since the bankruptcy and that accruing for the remainder of the demised term, the sum of $9,333.33. The balance of the $10,000 is claimed "for other possible breaches of the covenants in said lease contained." The trustee of the bankrupt occupied the leased premises from January 3, 1899, the date of adjudication, to January 27, 1899, inclusive, and has paid the petitioner therefor the sum of $275, which is rental for the time of his occupancy at the rate provided in the lease; and delivered possession of the premises to the agent

of the lessor. Thereupon said agent rented the premises to Joseph L. Hudson, who had purchased a portion of the bankrupt's stock. Hudson paid rent to the agent for the five days of his occupancy, viz. $55; and surrendered the premises to petitioner's agent. After Hudson vacated the premises, the store was rented a third time to one O. C. Frederick, for a short period, who paid $100 to said petitioner for the rental thereof. August 15, 1899, Mrs. Thompson, the lessor, filed a petition stating that there was due her absolutely upon the contingent claim previously filed the sum of $2,396.41, the covenanted rental of the premises to September 1, 1899, and asked that amount be "allowed as an absolute claim." A hearing was had before the referee upon this petition of Mrs. Thompson for the accrued rental. The referee found: (1) That the lessor had not consented to the termination of the lease to Mahler; (2) that rent which accrued subsequent to the adjudication in bankruptcy was not a provable claim against the estate of the bankrupt; and (3) that the lessor's claim against Mahler individually for rent due after he was adjudicated a bankrupt is unaffected by his discharge.

The lease to Mahler contains the following clause:

"Provided, that, if any rent shall be due and unpaid, or if default be made in any of the covenants or conditions herein contained, then it shall be lawful for the party of the first part, her certain attorney, representatives, agents, or assigns, to re-enter into and repossess the said premises, and the said party of the second part, and each and every other occupant to remove and put out. And the said party of the second part hereby waives notice to quit, and demand of rent or possession, and all other notices, in case he shall neglect or refuse to pay the rent specified in said lease in accordance with the terms thereof."

And also the following clause:

"Said party of the second part hereby expressly agrees that he will not sell, assign, or transfer this lease, and that he will not sublet said premises hereby leased, nor any part thereof, without the written consent of the party of the first part indorsed thereon."

Equivalent provisions are also contained in the lease to Sullivan, hereinafter mentioned.

The evidence and the findings and order of the referee have been certified to this court for review under general order 27 (32 C. C. A. xxvii., 89 Fed. xi.). Exceptions to the referee's findings of fact and law have also been taken. Since the certification by the referee, the parties have filed a stipulation by which it is admitted that on the 18th day of November, 1899, petitioner made a lease of the premises formerly leased to bankrupt to one Roger J. Sullivan for the term of five years from and after the 1st day of January, 1900, at an annual rental of $3,000 per year. A copy of this lease is attached to the stipulation, from which it appears that petitioner has covenanted thereby that, if said Sullivan shall pay the rent above reserved in manner aforesaid, and observe, keep, and perform all covenants and agreements, he "shall and may have, hold, occupy, possess, and enjoy the said demised premises with the appurtenances for and during the term aforesaid" (five years). It is also stipulated that Sullivan "has taken possession of said premises, and is now paying rent therefor to said petitioner [Mrs. Thompson]

in accordance with the terms of said lease." The question presented is whether the petitioner has a provable claim under the lease against the estate of the bankrupt for the covenanted installments of rent accruing after the lessee had been adjudicated.

Section 63 of the act of 1898 defines and classifies provable debts. Omitting subdivisions 2, 3, 4, and 5, which are conceded to have no application to this case, it provides:

"(a) Debts of the bankrupt may be proved and allowed against his estate, which are:

"(1) A fixed liability as evidenced by a judgment or instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not, with interest thereon which would have been recoverable at that date, or with a rebate of interest upon such as was not then payable, and did not bear interest. * * *

"(b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall elect, and may thereafter be proved and allowed against his estate."

Subdivisions 2, 3, 4, and 5 of the section have no application to this case. It is argued for the petitioner that the claim has become fixed, and is capable of definite computation, and, if presented before a final dividend, should be allowed. Alternatively it is urged that it is an unliquidated claim, capable of valuation, and therefore provable under the last clause of section 63, cited supra. It is clear that the claim for future rent is not "a fixed liability * * * absolutely owing at the time of the filing of the petition against him" (the bankrupt), because before the day at which rent is covenanted to be paid it is in no sense a debt. It is neither debitum nor solvendum; for, if the lessee is evicted before that day, it never becomes payable. Bordman v. Osborn, 23 Pick. 295; Savory v. Stocking, 4 Cush. 607; Deane v. Caldwell, 127 Mass. 242; Wilder v. Peabody, 37 Minn. 249, 33 N. W. 852; In re Commercial Bulletin Co., 2 Woods, 220, Fed. Cas. No. 3,060. It is said by Chief Justice Gray in the case of Deane v. Caldwell: "It is not an existing demand, the cause of action for which depended upon a contingency, but the very existence of the demand depended upon a contingency." A covenant to pay rent quarterly creates no debt until it becomes due, for before that time the lessee may quit, with the consent of the lessor; or he may assign his term with his consent; or he may be evicted by a title paramount to that of the lessor. In either of such cases he will be discharged from his covenant. Wood v. Partridge, 11 Mass. 488. It is not an unliquidated claim, capable of valuation, which may be proved and allowed after its amount has been ascertained. The general intent of congress in the enactment of the statute was to make every debt and demand existing against the bankrupt at the time of his adjudication, which was recoverable either at law or in equity, provable in bankruptcy. This provision, however, is evidently intended to include and permit the proof of such claims then existing as are uncertain only in amount. Unlike the acts of 1841 and 1867, it does not expressly authorize proof of contingent claims; and, if it did, petitioners could not be classed in that category, for the reason stated in Deane v. Caldwell, supra; "that the very existence of the demand depended upon a contin-

gency"; or, to adopt the distinction between a provable contingent claim under the act of 1867 and one not provable, the former is payable on the happening of an uncertain event, but the sum to be paid is certain, while in the latter both the happening of the event and the amount to be paid are uncertain and contingent, and depend on the time the event may happen. Wolf v. Stix, 99 U. S. 8, 25 L. Ed. 309. In Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232, Riggin was sued for damages for breach of a covenant of seisin in a conveyance. One Martin Thomas had owned the premises, to which his wife had never relinquished her right of dower. Riggin pleaded in defense his discharge under the bankruptcy act of 1841, obtained in June, 1843. Thomas, the former owner, died in 1848. In 1868, Magwire, who claimed under Riggin, was sued by Thomas' widow for the value of her dower, and the widow recovered. Magwire brought his action against Riggin for damages under the covenant of seisin, to which Riggin pleaded his discharge in bankruptcy. The question was whether Riggin was discharged from this demand by his discharge in bankruptcy in 1843. This depended upon the question whether the claim could have been proved against him in the bankruptcy proceedings. The fifth section of the bankruptcy act of 1841 provided as follows:

"All creditors whose debts are not due and payable until a future day, all annuities, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, indorsers, bail, or other persons having uncertain or contingent demands against such bankrupt, shall be permitted to come in and prove such debts and claims under the act, and shall have a right, when those debts or claims become absolute, to have the same allowed them; and such annuities and holders of debts payable in future may have the present value thereof ascertained under the direction of such court, and allowed them accordingly, as debts in præsenti."

The court held, in an opinion by Mr. Justice Bradley, as follows:

"It is argued that under the right given by the fifth section of the bankruptcy act of 1841 to prove 'uncertain and contingent demands,' the claim in this case could have been proven under the act. But the better opinion is that, as long as it remained wholly uncertain whether a contract or engagement would ever give rise to an actual duty or liability, and there was no means of removing the uncertainty by calculation, such contract or engagement was not provable under the act of 1841. See 1 Smith, Lead. Cas. p. 1251, notes to Mills v. Auriol, by Hare. In 1843, Martin Thomas was still living, and there was no certainty that his wife would ever survive him. It was uncertain whether there would ever be any claim or demand. On what principle, then, could the covenant have been liquidated, or reduced to present or probable value? If an action at law had been brought on the covenant at that time, nominal damages at most, if any damages at all, could have been recovered. It did not come within the category of annuities and debts payable in future, which are absolute, existing claims. If it had come within that category, the value of the wife's probability of survivorship after the death of her husband might have been calculated on the principles of life annuities. Had a proposition for a compromise of her right been made between her and the owner of the land, such a mode of estimation would have been very proper. But, without authority from the statute, the assignee would not have been justified in receiving such an estimate and making a dividend on it. It is unnecessary to review the authorities pro and con on the subject. They are quite numerous, and are mostly cited in the note of Mr. Hare, above referred to. The case is so clear that we have hardly entertained any doubt about it."

The act of 1841 was also construed in Bosler v. Kuhn, 8 Watts & S. 183; Savory v. Stocking, 4 Cush. 607,—in both of which cases it was held, notwithstanding the ample authority it gave to prove contingent debts and for their valuation, that rent accruing after the adjudication was not provable as a contingent debt.

In Ex parte Houghton, 1 Low. 554, Fed. Cas. No. 6,725, it was held that a claim for rent accruing after an adjudication could not be held either as a debt or unliquidated damages, under the act of 1867. The elements of uncertainty in point of time, amount, and contingencies prevent the liquidation of the claim, or the ascertainment of its present or future value.

In Bosler v. Kuhn, supra, Gibson, C. J., said:

"A rent service is not a debt, and a covenant to pay it is not a covenant to pay a debt. It is a security for the performance of a collateral act. The annual payments spring into existence, and for the first time become debts, when they are demandable; for, while they are growing due, the landlord has no property in anything distinct from the corpus of the rent or the realty of which they are the product; and the fruit must be severed from the tree which bears it before it can become personal property and a chose in action. A debt is an entire thing, although it be payable by installments; and to admit it to be proved when thus constituted would require the installment to be combined by a penalty, such as formerly was called in aid of an annuitant, or else to be consolidated by the contract. To whatever length the law may go for the purpose of liquidating a contingent demand, it must necessarily stop short when the demand is not only uncertain in itself, but incapable of being reduced to a certainty."

Note to Mills v. Auriol, 1 Smith, Lead. Cas. p. 1251.

Although this construction of the act of 1898, if correct, authorizes the rejection of the petitioner's claim, another ground of defense is insisted upon by the trustee, founded upon the practical acceptance of the surrender of the premises by the lessor, and evidenced by the renting thereof to Hudson, Frederick, and the trustee, and later to Sullivan for a term of years from November 18, 1899. While nothing can be predicated upon the action of the lessor in permitting the occupancy of the premises by the trustee, as the latter had a reasonable time to elect whether he would accept the lease or not, and could not be charged with its acceptance by reason of the goods remaining in the leased premises after the bankruptcy, yet the renting of the premises to Hudson, Frederick, and later to Sullivan for a term of years, was a practical eviction of the lessee, terminating his interest under the lease, and authorized by its terms. As is said by Judge Lowell in Ex parte Houghton, supra:

"The petitioners have availed themselves of the power of re-entry, and have put an end to the estate of the bankrupt, and repossessed themselves 'as of their former estate.' Such an entry is an eviction, and puts an end to the rent by operation of law. * * * They cannot be heard, after they have entered, and exercised all acts of ownership, and relet the premises, to say that they have not entered as lessors nor to repossess the premises, but merely as agents of the lessee, and to save the estate from waste. We have already seen that this lease confers no power or agency upon the petitioners in this matter, and their entry must be taken to be according to their right. It is immaterial whether the bankruptcy was the breach for which they entered. It is enough that they have entered lawfully, and have ended the term and the rent together. If the lease had been valuable, and they had relet the shop

for an increased rent, I do not see how the assignee could have made any valid objection to the re-entry."

The lease in the case at bar did not authorize the lessor to act as agent for the lessee. The facts of this case are nearly parallel with those in Day v. Watson, 8 Mich. 535, where the tenant gave the key of the demised premises to the agent of the lessor, and surrendered possession. The lessor brought an action for the rent accruing during the agent's possession. The court said:

"There is no proof in the case from which an inference can be legitimately drawn that the entry of defendant in error was by consent of her tenant, or under any arrangement with them. This being so, and the entry followed by continued possession which was inconsistent with the time assured to the tenants under the lease, that possession amounted very clearly to an eviction. If she [the lessor] be regarded as entering on conditions broken, that would signify an intention to terminate the lease entirely. If she regarded the lease as still continuing, the right to rent was suspended during the occupancy. In the absence of any evidence showing an understanding with the tenant, she had no right to reassume possession whether the premises were vacant or not, if she designed to regard the lease as continuing."

See, also, Deane v. Caldwell, supra, as to the effect of lessor's unqualified acquiescence in the surrender of the lease. See, also, Gray v. Ice-Cream Co., 162 N. Y. 388, 56 N. E. 903.

As there is no evidence that the lessor restored or surrendered the possession to the bankrupt, it must be presumed that her possession continued until the demise to Sullivan, who is now in occupancy thereof, under the lease made by the lessor. Petitioner therefore has no legal or equitable claim against the bankrupt's estate under the covenants of the lease.

Other questions have been argued by counsel, and authorities cited, which it has not been considered necessary to examine. The only question calling for decision is that upon the character of petitioner's claim. Whether the bankrupt remains liable under the covenants of his lease, and, if so, to what amount, notwithstanding his discharge, is not decided. The conclusion of the referees that petitioner's claim is not provable against the bankrupt's estate is approved.