## Charles W. Murphy, Plaintiff in Error, v. Chicago League Ball Club et al., Defendants in Error.

### Gen. No. 26,158.

1. CORPORATIONS—*when bill shows no taxes unpaid at time corporation ceased doing business.* In a suit brought against a corporation and its stockholders under section 25 of the Corporation Act (J. & A. ¶ 2442), upon the ground that the corporation had ceased "doing business, leaving debts unpaid" within the meaning of the act, on April 1, 1916, complainant's claim that when the corporation ceased doing business on that date it left debts unpaid, consisting of the general taxes for 1915 upon premises leased of complainant, is negatived by allegations of the bill that the corporation "paid the taxes and special assessments levied on said premises and payable in 1916," and that it "failed and refused to pay taxes and special assessments on said property due and payable since the year 1916.

2. WORDS AND PHRASES—*"debt" defined.* A "debt" is ordinarily that which is then due from one person to another.

3. WORDS AND PHRASES—*"liability" defined.* A "liability" in its broader sense means any obligation one is bound in law or justice to perform and is synonymous with "responsibility."

4. CORPORATIONS—*what constitutes "leaving debts unpaid."* A "debt" within the meaning of the condition "leaving debts unpaid," as named in section 25 of the Corporation Act (J. & A. ¶ 2442), means debts due at that time and not future obligations, the purpose of the statute being to secure quick action in collecting what is then due, payment of which the creditor has immediate right to enforce.

5. CORPORATIONS—*entire amount payable under lease as a present debt under section 25 of the Corporation Act.* A provision of a lease covering a long period that the lessee agrees to pay "for the full terms of said lease the sum of $1,530,388.89," does not make the obligation a present debt within section 25 of the Corporation Act (J. & A. ¶ 2442), in view of further provisions that such rent should be paid at a certain rate per year and be paid from time to time in quarterly instalments in advance.

6. CORPORATIONS—*materiality of question as to who paid debts under section 25 of the Corporation Act.* On the question of whether a corporation owed debts, within section 25 of the Corporation Act (J. & A. ¶ 2442), when it ceased doing business it is unimportant by whom its debts had been paid.

7. CORPORATIONS—*when demurrer properly sustained to bill under section 25 of the Corporation Act.* When a bill, filed under section 25 of the Corporation Act (J. & A. ¶ 2442), not only does not show the conditions required by the act but affirmatively shows that such conditions do not exist, the bill will not lie and a demurrer thereto is correctly sustained.

8. EQUITY—*when dismissal for want of equity proper.* When a bill, filed under section 25 of the Corporation Act (J. & A. ¶ 2442), fails to state a case within that section, it is not merely a question of jurisdiction, and a dismissal for want of equity is proper.

Error to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed May 16, 1921. Rehearing denied and additional opinion filed May 31, 1921. *Certiorari* denied by Supreme Court (making opinion final).

McARDLE & McARDLE and P. L. McARDLE, for plaintiff in error.

MAYER, MEYER, AUSTRIAN & PLATT, for defendants in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

Complainant's amended bill of complaint was met by general and special demurrers which were sustained, and complainant refusing to amend the bill, an order was entered dismissing it for want of equity. We are asked to reverse this.

Complainant sought to recover certain sums of money found to be due him and to have other relief, basing his bill on section 25 of the Corporation Act (J. & A. ¶ 2442), in force when the bill was filed. Whether the bill states a case under the act is the initial controverted question before us.

The amended bill of complaint was filed June 3, 1918, on behalf of complainant and all other creditors of the Chicago League Ball Club. It alleged that on May 17, 1909, the complainant Anna Sinton Taft leased certain premises to the Chicago League Ball Club, a corporation of Illinois, for a term commencing December 28, 1908, and ending January 3, 1992, for a total rental of $1,530,388.89, payable quarterly in advance on the first days of February, May, August and November of each year, also that as additional rent the lessee agreed to pay all taxes, special assessments, etc., when due; that the Chicago League Ball Club was incorporated under the laws of Illinois in 1893 with a capital stock of $100,-000, for the purpose of giving exhibitions of baseball and other athletic sports, and gave such exhibitions until January, 1916; that the National League of Professional Baseball clubs was organized in 1876, and is a voluntary association, consisting of eight baseball clubs annually playing a series of baseball games with each other. It has a constitution and rules regulating the games played by its members and providing for the control and reservation of baseball players under contracts made with the respective members of such association.

In April, 1914, the Federal League Baseball Club was incorporated under the laws of Illinois, with a capital stock of $250,000, and it established baseball

grounds in Chicago and commenced giving exhibitions of baseball; in November, 1914, its capital was increased to $500,000. Charles Weeghman, who was president of this club, purchased the entire capital stock of the Chicago League Ball Club in January, 1916, for $575,000, and upon the transfer of stock, said Weeghman, W. N. Walker and A. D. Plamondon, who were then directors of the Federal League Ball Club, were elected directors of the Chicago League Ball Club, While the stock was taken in the name of Charles Weeghman, it was taken for the persons who are named as defendants in the bill, who were the real purchasers.

At the time of this purchase of stock the Chicago League Ball Club had contracts for the year 1916 with certain baseball players, calling for salaries aggregating over $110,000. Each contract contained a provision whereby the player consented to being transferred to any other club in the National League of Professional Baseball Clubs at the will of the Chicago League Ball Club. At this time the Chicago League Ball Club owned personal property to the value of $12,-000 and other assets consisting of its franchise in the National League, alleged to have been worth $700,000; the players' contracts above referred to, alleged to be worth $250,000; the good will of the club valued at $200,000; the name of the ball team, "The Cubs," and its lease with complainant.

The new directors of the Chicago League Ball Club thereupon proceeded to transfer to the Federal League all the assets of the Chicago League Ball Club, including its ball club, without the payment of any consideration, and in April, 1916, the name of the Federal League Baseball Club was changed to the Chicago National League Ball Club, and this last club took over the franchise of the Chicago League Ball Club and was admitted to membership in the National League of Professional Baseball Clubs. Said players' contracts

were transferred to the Chicago National League Ball Club and the players named therein played baseball during 1916 and 1917 for said company or were transferred to other clubs for a money consideration of not less than $15,000.

The bill alleges that this last-named club took possession of the above-mentioned leased premises and "assumed the obligation of said lease"; that it paid the rent due under the lease from January 1, 1916, to and including the rent due August 1, 1916.

It was provided by the constitution of the National League of Professional Baseball Clubs that any club of the League unable to meet its obligations might ask for permission to dispose of its rights and franchise as a member of the League, and in the event consent is given it must be arranged that the new member shall assume, with the franchise and rights of the retiring company, all existing liabilities, responsibilities and obligations entered into by the retiring company. The bill charges that since November 1, 1916, the Chicago National League Ball Club has refused to comply with any of the terms and conditions of said lease.

The bill contains a list of items claimed to be due complainant under the lease, the first of which is dated November 1, 1916, "rent, $3,000"; then follow other items, rent, insurance premiums, taxes, etc., falling due in 1917, and to the date of the filing of the bill. These total $20,768.95. The bill further alleges that since April 1, 1916, the Chicago League Ball Club has not carried on any business and that since that date it has ceased doing business within the meaning of section 25 of the Corporation Act; that at the time it ceased doing business it had "debts and liabilities evidenced by the obligations of said corporation to your orator under said lease"; that in February, 1916, it failed to report to the Secretary of State as required by law, and by reason thereof the Secretary of State on April 26, 1916, entered upon the record of his office

a cancellation of its charter and thereby said corporation became liable to a forfeiture of its charter within the meaning of section 25.

The bill prayed that the above items may be found due to complainant, and that the Chicago National League Ball Club should be held to be a continuation of the Chicago League Ball Club and to have assumed all the debts of the latter company and to be now liable to the complainant for all sums due and for all sums that may become due under said lease, and liable for the performance of all the covenants and agreements of the lease, the same as if it had been the lessee in the first instance. The bill also prays that the acts and transactions alleged therein be held to be a fraud upon the rights of complainant and that the individual defendants be held individually and collectively liable for the moneys due or to become due under the lease to the extent of the value of the property and assets of the Chicago League Ball Club, and that such assets be charged with a lien in favor of the complainant.

Does complainant's bill make a case under section 25 of the Corporation Act (J. & A. ¶ 2442)? This section in force when the bill was filed is in part as follows:

"If any corporation or its authorized agents shall do, or refrain from doing any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record, for a payment of money after demand made by the officer, to be returned 'No property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his pro rata share of such debts or liabilities to the extent of the unpaid por-

tion of his stock after exhausting the assets of said corporation.''

The section further gives power to courts of equity to close up the business and to appoint a receiver with power to sue.

The bill alleges that the Chicago League Ball Club ceased doing business April 1, 1916, and it is argued by complainant's counsel that the bill shows that at the time it ceased doing business it left debts unpaid, thus asserting the existence of the condition precedent to proceeding under section 25, namely, ''If any corporation shall  *  *  *  cease doing business, leaving debts unpaid.'' Defendants contend that the bill shows no debts were unpaid on April 1, 1916, when the company ceased doing business. This is true unless the obligations of the lease created debts then unpaid.

Complainant argues that under the lease the company was to pay taxes each year and hence the general taxes for 1915 were a debt and unpaid on April 1, 1916. The answer to this is the allegations of the bill that the Chicago National League Ball Club ''paid the rent due under said lease and  *  *  *  paid the taxes and special assessments levied on said premises and payable in 1916''; and that this company ''failed and refused to pay taxes and special assessments on said property due and payable since the year 1916.'' These allegations negative any claim of unpaid taxes when the Chicago League Ball Club ceased doing business on April 1, 1916.

It is said that the word ''debt'' in section 25 should be construed to mean not only anything owing in the present but also contingent future liabilities, and we are referred to the provision of the act fixing the share of stockholder's liabilities for ''debts or liabilities.'' A ''debt'' is ordinarily that which is then due from one person to another. ''Liability'' in its broader sense means any obligation one is bound in law or justice to perform, and is synonymous with ''responsi-

bility." Without discussing whether the word "liability" comprehends future contingencies, it is obvious that section 25, in naming as a condition for its operation "leaving debts unpaid," means debts at that time due and not future obligations. Otherwise a perfectly solvent concern, paying its bills promptly, upon selling out to a responsible party which assumed future maturing obligations, could be attacked under this section. Even a mortgage indebtedness, amply secured but not falling due for many years thereafter, would be an occasion for invoking this section. The purpose of the statute was to secure quick action in collecting what is then due, payment of which the creditor has immediate right to enforce.

It is next said that the terms of the lease make the obligation to pay rent a present debt because the lessee has agreed to pay "for the full terms of said lease the sum of $1,530,388.89." But the lease also provides that this amount shall be paid "at the times and in the manner following, that is to say, the rent for the first ten years of the term" shall be $12,000 a year; for the second ten years $15,000 a year; the rent for the balance of the period $20,000 a year, which rental was to be paid "from time to time in quarterly instalments, the rent for each quarter of the year being payable in advance on the first days of February, May, August and November of each year." Manifestly there was nothing due from the lessee until the respective times mentioned had been reached. A number of things might happen which would prevent these instalments from maturing into an indebtedness, such as a cancellation of the lease.

In a number of cases it has been held that future accruing obligations, and in some instances instalments of rent, cannot be considered as debts. Among such cases are *Gold v. Clyne,* 134 N. Y. 262; *Bottlers' Seal Co. v. Rainey,* 225 N. Y. 369, 122 N. E. 200; *Sanford v. Rhoads,* 113 N. Y. App. Div. 782, 99 N. Y. Supp. 407;

*Trustees of Masonic Hall v. Fontana,* 99 N. Y. Misc. 497, 164 N. Y. Supp. 370; *Deane v. Caldwell,* 127 Mass. 242; *Wilder v. Peabody,* 37 Minn. 248, 33 N. W. 852; *Bordman v. Osborn,* 23 Pick. (Mass.) 295. This court has likewise held in *Silverman v. North Side Sash & Door Co.,* 207 Ill. App. 3. We there quoted with approval from *Whelan v. Enterprise Transp. Co.,* 166 Fed. 138, that "rent not accrued is neither payable nor a debt."

It is, asserted in argument that the rental was a debt when the old club ceased business because the instalments which fell due February 1, May 1 and August 1, 1916, were paid by the Chicago National League Ball Club before its name came into existence and before it took over membership in the National League of Professional Baseball Clubs. This is not important. If these instalments of rent were paid as the bill alleges they were, no matter by whom, any indebtedness thereon of the Chicago League Ball Club was satisfied, leaving no debt therefor.

The language of section 25 permitting the filing of a bill thereunder is very definite as to the necessary conditions, and the allegations of the bill do not show their existence. Indeed, they show affirmatively that at the time the Chicago League Ball Club ceased doing business it left no debts unpaid. Under such circumstances such a bill will not lie and the chancellor correctly sustained the demurrer.

Complainant's counsel make the additional point that if the bill does not state a case for section 25, this only goes to the jurisdiction of the court and that the decree should have been dismissed for want of jurisdiction and not for want of equity. This is not a question of jurisdiction. Complainant has failed to state a case calling for the exercise of the equity powers of the court, and under such circumstances a dismissal for want of equity is proper.

For the reasons above indicated the decree of the superior court is affirmed.

*Affirmed.*

HOLDOM, P. J., and DEVER, J., concur.

ADDITIONAL OPINION.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Complainant has filed a petition for rehearing suggesting again that the form of the judgment order should show that the bill was dismissed for want of jurisdiction only. After further consideration we see no reason to depart from what we said on this point in our opinion, and the petition is denied. We are told that in a suit in assumpsit upon the lease against the Chicago National League Ball Club, defendant has pleaded this decree as *res adjudicata.* Nothing was intended either in the above opinion or in the judgment to affect any suit at law upon the lease. Our judgment was based solely upon the grounds stated in the opinion and it is not an adjudication of the rights of the parties in other proceedings.