### RIGGIN *v.* MAGWIRE.

1. The fifth section of the Bankrupt Act of 1841 enacts that—

> "All creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, indorsers, bail, or other persons having *uncertain or contingent demands* against such bankrupt, shall be permitted to come in and prove such debts and claims under the act, and shall have a right when those debts or claims become absolute, to have the same allowed them; and such annuitants and holders of debts payable in future may have the present value thereof ascertained under the direction of such court, and allowed them accordingly, as debts *in præsenti.*"

Under this section, so long as it remains wholly uncertain whether a contract or engagement will ever give rise to an actual duty or liability, and there is no means of removing the uncertainty by calculation, such contract or engagement is not provable under the act.

2. A claim for a breach of covenant that the grantor has an indefeasible estate in fee in land sold—the claim arising from the right of his wife, yet living, to be endowed of the estate—is of this character during the life of the husband.

ERROR to the Supreme Court of the State of Missouri.

Magwire sued Riggin in the Circuit Court of St. Louis County, Missouri, to recover damages for a breach of cove-

* 11 Wallace, 109.

nant. The defendant pleaded a discharge under the Bankrupt Act of 1841, obtained in June, 1843, but his plea was disallowed, both by the lower court and by the Supreme Court of Missouri on appeal. He, therefore, brought the case here by writ of error.

The case was this:

On the 2d of December, 1839, Riggin conveyed a certain tract of land near St. Louis to one Ellis, in fee. The operative words of the conveyance were "grant, bargain, sell," &c., which words in Missouri create a covenant that the grantor has an indefeasible estate in fee.[*] The fact was that, prior to the execution of this deed, the property had belonged to one Martin Thomas, whose wife had never relinquished her right to dower in it. But Thomas was then living, and did not die until 1848, several years after the alleged discharge of Riggin as a bankrupt. The property afterwards, by regular devolution of title, came into possession of Magwire, who sold it in lots to various persons. In 1868 these persons were sued by Mrs. Thomas, widow of Martin Thomas, for the value of her dower, and were obliged to pay it, and the plaintiff was obliged to refund them the amount. He, therefore, brought this suit against Riggin for damages under his implied covenant of indefeasible seizin.

The question was, whether Riggin was discharged from this demand by his decree of discharge in bankruptcy in 1843? Whether he was or not depended on the question whether the claim could have been proved in that proceeding. The 5th section of the Bankrupt Act of 1841[†] declares as follows:

"All creditors whose debts are not due and payable until a future day, all annuitants, holders of bottomry and respondentia bonds, holders of policies of insurance, sureties, indorsers, bail, or other persons having *uncertain or contingent demands* against such bankrupt, shall be permitted to come in and prove such

---

[*] Revised Statutes of 1855, c. 32, § 14; Magwire v. Riggin, 44 Missouri, 512.

[†] 5 Stat. at Large, 445.

debts and claims under the act, and shall have a right, when these debts or claims become absolute, to have the same allowed them; and such annuitants and holders of debts payable in future may have the present value thereof ascertained under the direction of such court, and allowed them accordingly, as debts *in præsenti*."

*Messrs. Glover and Shepley, for the plaintiff in error:*

The plain words of the fifth section include all "uncertain and contingent demands," *i. e.*, "uncertain and contingent demands" of every kind and character. The claim for the wife's dower was undoubtedly a valid claim, and a claim always subsisting; and because it was an uncertain and contingent claim it was provable under this fifth section.

The question now before the court was considered in effect by the Supreme Court of New York in *Jemison* v. *Blowers*,[*] where a discharge was pleaded against a suit brought upon the covenant for quiet enjoyment, and after a careful examination of the act of 1841 the court came to the conclusion that the discharge was a bar to the action. *Shelton* v. *Pease,* in the Supreme Court of Missouri,[†] is to a similar effect.

*Messrs. Blair and Dick, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

It is argued that under the right given by the fifth section of the Bankrupt Act of 1841 to prove "uncertain and contingent demands," the claim in this case could have been proven under the act. But the better opinion is, that as long as it remained wholly uncertain whether a contract or engagement would ever give rise to an actual duty or liability, and there was no means of removing the uncertainty by calculation, such contract or engagement was not provable under the act of 1841. See 1 Smith's Leading Cases,[‡] notes to *Mills* v. *Auriol*, by Hare. In 1843 Martin Thomas was still living, and there was no certainty that his wife would ever sur-

---

[*] 5 Barbour, 686.                    [†] 10 Missouri, 475.
[‡] Page 1137, 6th American edition.

vive him. It was uncertain whether there would ever be any claim or demand. On what principle, then, could the covenant have been liquidated or reduced to present or probable value? If an action at law had been brought on the covenant at that time nominal damages at most, if any damages at all, could have been recovered. It did not come within the category of annuities and debts payable in future, which are absolute existing claims. If it had come within that category, the value of the wife's probability of survivorship after the death of her husband might have been calculated on the principles of life annuities. Had a proposition for a compromise of her right been made between her and the owner of the land, such a mode of estimation would have been very proper. But, without authority from the statute, the assignee would not have been justified in receiving such an estimate and making a dividend on it.

It is unnecessary to review the authorities *pro* and *con* on the subject. They are quite numerous, and are mostly cited in the note of Mr. Hare, above referred to. The case is so clear that we have hardly entertained a doubt about it.

JUDGMENT AFFIRMED.