In re ELLIS et al.

ELLIS et al v. HARKNESS & TOWLER et al.

(Circuit Court of Appeals, Sixth Circuit. February 15, 1906.)

Nos. 1,486, 1,487.

BANKRUPTCY—INVOLUNTARY PROCEEDINGS—PETITIONERS HAVING PROVABLE CLAIMS.

A subcontractor has no provable claim against a building contractor which entitles him to join in a petition in involuntary bankruptcy against such contractor under Bankr. Act. July 1, 1898, c. 541, § 59b, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445], for work and material for which the contractor has not yet been paid by the owners furnished under a contract which provides that the liability of the contractor to the subcontractor for such labor and material shall only accrue after the owners shall have paid the contractor on account thereof, and also with respect to payments that the contractor shall pay the subcontractor as the work progresses in the same proportion as he receives payment from the owners under the principal contract and the final payment when he receives final payment from the owners and not before.

Petition to Review an Order of the District Court of the United States for the Southern District of Ohio.

Appeal from the District Court of the United States for the Southern District of Ohio.

Louis J. Dolle and Constant Southworth, for bankrupts.

Otis H. Fisk, Kramer & Kramer, W. J. Overbeck, and Galvin & Galvin, for petitioning creditors.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This is a petition of alleged bankrupts to review an order made by the District Court in a bankruptcy proceeding. An appeal was taken from the same order, but the matter will be considered upon the petition.

The alleged bankrupts, William H. Ellis and Harry E. Kennedy, doing business as W. H. Ellis & Co., are building contractors, and, among others, had the contracts for the construction of the large office buildings known as the "Ingalls Building," in Cincinnati, and the "Harrison Building," in Columbus, Ohio. Three of their subcontractors, Harkness & Towler, the Gem City Boiler Company, and Voightmann & Co., alleging that they had provable claims amounting respectively to $55.01, $299, and $1,793.93, in all exceeding $500, petitioned that Ellis & Co. be adjudged bankrupts, averring the latter were insolvent and had committed an act of bankruptcy. Ellis & Co. answered, denying they were insolvent, denying they had committed an act of bankruptcy, and, after describing the origin of the claims relied on, denied any indebtedness to the petitioners or that the

latter had any provable claims. A hearing was had before the District Court upon the pleadings and evidence, on the sole question whether the petitioners had provable claims authorizing them to act and the court found they had. There is no dispute as to the facts, which are conceded. While the court made no finding of the facts, they are stated in the petition for review, and appear with sufficient clearness in the pleadings and evidence. The question for decision is one of law. In re Taft, 133 Fed. 511, 66 C. C. A. 385.

Ellis & Co. constructed the Ingalls Building in Cincinnati, at a contract price of $450,000, and the Harrison Building in Columbus, at a contract price of $300,000. In each case the owners refused to make the last payment under the contract, and suits were brought by Ellis & Co. in the state courts at Cincinnati and Columbus, for $90,918.39 on account of the balance due on the Ingalls Building, and for $94,000 on account of the balance due on the Harrison Building. Two of the petitioning creditors, Voightmann & Co. and the Gem City Boiler Company, were subcontractors on the Ingalls Building, and the third, Harkness & Towler, a subcontractor on the Harrison Building. The contracts for the construction of these buildings each provided that the contract price should be paid upon certificates of the architects to be issued monthly at the rate of 50 per centum of the value of the material on the ground, and 90 per centum of the value of the work in place, the final 10 per centum of the contract price not to be paid until, in the case of the Harrison Building, 30 days, and, in the case of the Ingalls Building, 60 days, after the work should be completed, approved by the architects, and accepted by the owners. Each of the subcontracts upon which the petitioners found their claims had attached to and made a part of it a copy of the contract for the entire building, and each contained substantially similar provisions respecting the liability or obligation of the contractor and the payment of the contract price.

Taking for illustration the contract with the Gem City Boiler Company, the obligation or liability of the contractor was thus limited and defined:

"The party of the second part [the subcontractor] agrees that the performance of this agreement shall proceed under the direction of the party of the first part [the contractor], and that every order made by the 'owners' affecting the work, material and labor herein contracted for, shall have the same binding force and effect upon the party of the second part [the subcontractor] that it or they may have upon the party of the first part [the contractor], and that the liability of the party of the first part [the contractor] to pay for such material and labor shall only accrue after such material shall have been placed in position and the 'owners' shall have paid the party of the first part [the contractor] on account of such material, work and labor."

And the payment of the contract price was thus regulated:

"The party of the first part hereto, in consideration of the promises and agreements of the party of the second part, as herein set forth, and in consideration of the due performance thereof, doth hereby agree to pay to the said party of the second part the sum of three thousand ($3,000.00) dollars in the following manner, that is to say: It will pay to the party of the second part a sum of money equal to 50 per cent. of value of material on

ground and 90 per cent. of value of work in place per centum for all labor and material which has been placed in position and for which payment has been made by said 'owners' to said party of the first part, except the last payment, which the said party of the first part shall pay when it shall receive final payment for the labor and material performed hereunder, at which time it will pay to said party of the second part the balance due under this agreement."

As to the amount of the claims, that of the Gem City Boiler Company is concededly for the retained 10 per cent. alone. Those of the other petitioning creditors include also some small disputed items not approved by the architects. It is admitted with respect to each that the owners have not yet paid the contractor for the labor and material covered by the claim. The question for consideration is, therefore, whether a subcontractor has a provable claim against a contractor for work and material for which the contractor has not yet himself been paid by the owners, under a contract which provides that the liability of the contractor to the subcontractor for such material and labor shall only accrue after the owners shall have paid the contractor on account thereof, and which further provides, with respect to payments, that the contractor shall pay the subcontractor a sum of money equal to 50 per cent. of the value of the material on the ground, and 90 per cent. of the value of the work in place, for all labor and material which has been placed in position, and for which payment has been made by the owners to the contractor except the last payment, which the contractor shall pay when he shall receive final payment, and not before.

Section 59b of the bankruptcy act of July 1, 1898, provides that:

"Three or more creditors who have provable claims against any person which amount in the aggregate * * * to $500.00 or more * * * may file a petition to have him adjudged a bankrupt." 30 Stat. 561, c. 541 (U. S. Comp. St. 1901, p. 3445).

Provable claims are defined in section 63, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]), which provides among other things:

"Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded on open account, or upon a contract express or implied."

The claims in question are presented as claims upon accounts for material furnished and labor performed in the construction of the buildings mentioned. They are not, however, founded upon open accounts, but upon express contracts, being the subcontracts mentioned; and obviously whether they are provable claims depends upon whether, at the time of the filing of the petition, they were debts of the alleged bankrupts for which the latter were then liable and under obligation to pay.

On the part of the petitioning creditors, it is insisted that, having done the work and furnished the material covered by the claims, the contractor then became indebted to them under the contract for the value of the same, and the provisions referred to only postponed the time of payment; that the debt came into existence when the work was done and the material furnished, but the contract post-

poned its payment until the owners should pay the contractor. We are unable to take this view of the effect of the contracts. The conditions mentioned do not simply regulate payment, but limit liability under the contracts. The contractor was made an intermediary between the owners and the subcontractor. Under the direction of the contractor, the subcontractor was to carry out the orders of the owners, and the liability of the contractor was only to accrue after the material was in place and the owners had paid the contractor on account of it.

A similar condition was annexed to payment. The contractor was not to pay till he had been paid. The owners had the right to retain 10 per cent. and not make the final payment until a certain time after the entire work was completed and accepted. The contractor naturally incorporated similar conditions into the subcontract, limiting his liability to the value of labor and material in place for which he had been paid by the owners, and stipulating that he should make the last payment only when he had received final payment from the owners. The contract governs, and under its terms he agrees to pay only for the labor and material for which he is paid. He assents to become the medium of payment to the subcontractor, but assumes no independent liability. His obligation, his debt, is altogether dependent upon the payments to him by the owners. This stipulation is doubtless a measure of protection. Such a contractor may not be able to pay until he is paid, and therefore limits his liability accordingly. Loveland on Bankruptcy, § 112; Wait on Eng. & Arch. Juris. §§ 342, 345, 412; Holdipp v. Otway, 2 Williams Saunders, 106; Clarke v. Watson, 18 Com. Bench Rep. N. S. 278; Wentworth v. Whittemore, 1 Mass. 471; Morgan v. Wordell, 178 Mass. 350, 59 N. E. 1037, 55 L. R. A. 33; People v. Arguello, 37 Cal. 524; Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232; Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084.

It is not contended that the contractor has wrongfully colluded with the owners, or in any other way is responsible for the delay in making the final payments on these buildings. He is therefore entitled to the protection of the contracts, under which, in our opinion, no liability on his part had then accrued, to pay for the labor and material in question. There being no liability, obligation, or debt, no provable claims existed.

The order of the court below is reversed, and the case remanded, with directions to dismiss the petition.