ROBERT P. BOWLER, *et al, vs.* MARY M. EMERY, Ex'x.

JUNE 25, 1908.

PRESENT: Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)   *Contingent Claim.   Retention of Assets by Executor.   Rent to Accrue.*

After decease of lessee, lessor filed in the Probate Court a claim alleged to be contingent against the estate of lessee, for the rent to accrue under the lease

for the remainder of the term and prayed that the court would order the executor to deposit in the registry of the court assets sufficient to satisfy the claim or otherwise provide for the same; basing the petition on section 922 of the Court and Practice Act, which provides "A person who has a contingent claim against a deceased person which cannot be proved as a debt within the time allowed for filing claims may file his claim in the office of the clerk of the Probate Court within the time allowed for filing claims. If, upon examination, it appears to the court that such claim may become justly due from the estate, the Probate Court shall order the executor or administrator to deposit in the registry of the court assets sufficient to satisfy such claim or its proportionate share in case of insolvency of the estate."

*Held*, that rent to accrue in future for the unexpired term of a lease was not within the meaning of said section.

(2) *Covenants for Payment of future Rent Bind Whom.*

In order for a covenant for payment of future rent to be binding upon the executor there must be privity of estate between the lessor and the executor.

(3) *What Rules Govern Lease of Property in Foreign State.*

The lease in question was a perpetual lease made in Ohio where all the parties resided and is to be governed as to its legal effect by the laws of that state, which provide that such an estate shall be subject to the same laws of descent as estates in fee. Such a lease, therefore, passed under the terms of the will in question to the residuary devisee and the executor took no interest in it, and there would be no privity of estate between the lessor and the executor.

(4) *Rent to Accrue in Future. Who Liable For.*

Under such a lease the personal estate of the testator is not liable for future rent and the lessor can only look to the land bound by the covenants upon which a preferred lien was expressly reserved and to the heirs and assigns of the lessee hereafter in case rent should remain unpaid in violation of the covenants.

Therefore the executor and personal estate not being liable there was no ground for the application for the retention of assets by the executor.

(5) *Same Rule as to Insolvent Estates.*

While the statute is applicable to insolvent as well as solvent estates the same rule would prevent the filing of the claim against an insolvent estate.

(6) *Effect of Bond to Pay Debts and Legacies.*

Where an executor, who is also residuary legatee, has given bond under C. P. A. §1013, to pay debts and legacies, thus exempting him from rendering an account, although by the express terms of his bond he has bound himself to "render an account when thereunto lawfully required" this latter provision is nugatory, and by the acceptance of the bond by the Probate Court, the estate is merged in the bond and all of its assets pass over and become the property of the residuary legatee and are no longer subject to the control of the Probate Court.

PROBATE APPEAL. Heard on exceptions of appellants and overruled.

PARKHURST, J. This cause comes into this court on exceptions of the appellants to the decision of the Superior Court, sitting at Newport, in favor of the appellee.

None of the facts of the case are disputed.

On February 11, 1882, Louisa F. Bowler, the predecessor in title of the appellants, perpetually leased to Thomas J. Emery, the appellee's testator, and to John J. Emery, his brother (as co-lessee), their heirs and assigns, a valuable lot of land situate in the city of Cincinnati, Ohio, upon which there were then, and are now, valuable permanent improvements, for the term of ninety-nine years from February 11, 1882, renewable forever, at an annual rent of $2,250, payable semi-annually; the lessees, for themselves, their heirs and assigns, covenanted that they, their heirs and assigns, would pay the rent and also pay the taxes and assessments upon the premises, and keep the improvements insured in a specified amount with an agreement contained in the lease, in regard to the application of the proceeds in case of loss under the policy. The lessor, in the lease, reserved to herself, her heirs and assigns, a lien upon the premises for the payment of rents, taxes, assessments and premiums, with a right of re-entry in case of sixty days default in the payment of the rents, taxes or assessments. All of the parties to the lease were at the time of its execution residents of the said city of Cincinnati, Ohio, and all of the covenants of the lease were to be there performed. A copy of this lease is incorporated into the bill of exceptions.

Thomas J. Emery, a few years before his death, became a resident of the town of Middletown, Rhode Island, and died testate on January 15, 1906, and his will was on February 21, 1906, duly admitted to probate by the Probate Court of the town of Middletown; by which will, after making certain specific bequests, he gave all of his residuary estate to his wife, the said Mary M. Emery, whom he appointed sole executrix of his will; and she was by said Probate Court appointed and duly qualified as such executrix, and is the appellee herein.

Mary M. Emery, being both executrix and residuary legatee, was entitled to give bond under the Court and Practice Act, §1013, which provides:

"Instead of the above bond an executor, if so authorized by the will, or if he be the residuary legatee thereunder, may give a bond to the Probate Court in a sum and with surety satisfactory to the court, and with condition to pay the funeral charges, debts, and legacies of the testator and such allowance as may be made by the court for the support of the widow and family of the testator. In such case an executor shall not be required to return an inventory, and an executor who is a residuary legatee need not render an account to the Probate Court."

Mrs. Emery, at the time of her appointment availed herself of the privileges of the above statute and on February 26, 1906, she executed a bond in the penal sum of $300,000 to the Probate Court of Middletown conditioned to pay the debts, legacies, allowances, etc., on the estate, "and to render upon oath, an account of her proceedings thereupon, when thereunto lawfully required," etc.

It is admitted in the bill of exceptions that

"2. At the time of the death of the said Thomas J. Emery, no default had occurred in the performance of any of the covenants of said lease on the part of the said lessees, nor has any default since occurred.

"3. That the said John J. Emery, one of the lessees, is still living.

"4. That the estate of said Thomas J. Emery, deceased, which has passed to his widow, Mary M. Emery, as residuary legatee and devisee under his will, is wholly solvent and consists in part of more than three millions of dollars in value in improved real estate in the city of Cincinnati, county of Hamilton, state of Ohio, in addition to other improved real estate of large value in several other states."

On June 21, 1906, the appellants filed in the Probate Court of said town of Middletown, a claim, alleged by them to be contingent, against the appellee, for the rent to accrue under said lease for the next seventy-five years, in the sum of $168,750,

payable in 150 semi-annual installments of $1,125 "each, on August 11, 1906, and thereafter semi-annually until August 11, 1981," and praying that the "Court will order the executor or administrator of said estate of said Thomas J. Emery, deceased to deposit in the registry of said Probate Court assets sufficient to satisfy said above described contingent claim or otherwise provide for the same according to law."

This claim was rejected by the said Probate Court, and an appeal was taken by the appellants to the Superior Court, where the claim was again rejected. A bill of exceptions was taken by the appellants and the case removed into this court.

(1)    The question raised by the bill of exceptions is whether or not the rent not yet due for the unexpired term of the lease is within the meaning of section 922 of the Court and Practice Act, providing as follows:

"Sec. 922.   A person who has a contingent claim against a deceased person which cannot be proved as a debt within the time allowed for filing claims may file his claim in the office of the clerk of the probate court within the time allowed for filing claims. If, upon examination, it appears to the court that such claim may become justly due from the estate, the probate court shall order the executor or administrator to deposit in the registry of the court assets sufficient to satisfy such claim or its proportionate share in case of insolvency of the estate."

Counsel for the appellants have cited no case in which the words "contingent claim" appearing in this statute, or in any similar statute, have been so construed as to include rent to accrue in future under a lease. They rely apparently upon an analogy attempted to be shown as existing in the English Chancery practice, where the executor, not being a residuary legatee, and having no personal interest in the estate, being called upon to distribute the estate, has asked the protection of the court by decree, allowing the reservation of sufficient assets of the estate in the hands of the executor, or a sufficient indemnity, so as to protect him against future claims for rent under leases held by the testator at the time of his decease.

A number of English Chancery cases are cited to show this

practice, in the attempt also to show that the English Chancery Courts have treated rent to accrue in future as a "contingent claim," and so, that such rent to accrue under the lease here in question is a "contingent claim" under our statute. The cases cited which relate to this practice of protecting the executor are: *Simmons* v. *Bolland*, 3 Merivale, 547; *Fletcher* v. *Stevenson*, 3 Hare, 360; *Dobson* v. *Carpenter*, 12 Beavan, 370; *King* v. *Malcott*, 9 Hare, 692; *Dodson* v. *Sammell*, 1 Dr. & Sm. 575; and *In re Nixon*, L. R. 1 Ch. Div. 638, (1904).

In none of the cases above cited were assets of the estate allowed to remain in the hands of the executor to indemnify him against possible future breaches of covenants to pay rent, make repairs, etc., unless upon the application of the executor himself for his own protection. In none of the cases was such an executor himself the residuary legatee; and in each case where the executor was allowed to retain assets for his own protection, it was found by Byrne, J. (*In re Nixon, supra*), after a careful review of the authorities to be a case where the leasehold interests of the testator vested in the executor so that there would be privity of estate between the executor and the lessor.

The only case cited where the lessor directly and on his own behalf made application for administration of the estate and for an order to have assets impounded for his protection against possible future breaches of covenant to pay rent, to make repairs, insurance, etc., was the case of *King* v. *Malcott*, 9 Hare, 692; and in this case the claim was dismissed. The opinion of Vice-Chancellor Turner is so distinctly illuminating as to the principles applicable to a possible future liability under covenants for payment of rent, etc., as distinguished from a strict contingent claim, that we quote freely from said opinion, as follows (pp. 694-5): "The question is, whether the plaintiff, who is the assignee of the reversioner on this demise, is now entitled to have the testator's assets thus impounded, for securing himself against possible breaches of the covenants. There has hitherto been no breach of covenant upon which any legal debt is due. No action would now lie against the executors for the purpose of compelling payment of any rent in ar-

rear, or any damages for repairs. Not only is there no rent due, but there is no certainty that anything ever will be due on any of these covenants; for if the rent be paid at the day, and if the other covenants be duly observed, no action will ever lie upon any of them. This case is therefore readily distinguishable from the cases which have been mentioned. Where there has been a bond or covenant for the absolute payment of a certain sum of money, there the money must become due, and must become due on the bond or covenant." *  *  *

"Why should the lessor have any such right as he claims in this case ? How can it be the result of the relation between landlord and tenant ? The landlord has not bargained with his tenant that the tenant's assets, or any fund whatever should be impounded for the purpose of securing his rent, or the due performance of his covenants. He has contracted for no such security. For the rent and for the performance of the covenants, he looks to the personal security of the lessee, or to the rights which he has expressly reserved to himself over the subject of the demise; and farther than that he cannot proceed at law; why should a court of equity give a more extended effect to the obligation contracted between a landlord and tenant than is given by a court of law ?"

It is not suggested that this case has ever been overruled or even doubted, and it is cited with approval in the late case of *In re Nixon*, L. R. 1 Ch. Div. (1904) 638, at p. 646:

"I should feel myself bound to follow an established practice, although there was no authority for it in the way of direct decision, or in the way of statutory enactment, but as matters stand there is no such practice established in a case like the present. Notwithstanding the industry of counsel, no case has been produced by which it can be shewn that assets have ever been retained unless in a case where there is privity of estate between the executors and the lessors. It is quite true that the real state of the facts in some of the authorities is not positively ascertainable. So far as appears none of the decisions relate to a case like the present where the executors have no privity of estate with the lessor. It is quite clear that, if the Court makes an order distributing this 65,900 £, the

executors will be under no liability to the lessors should they hereafter be sued. It also, I think, may be taken as clear that there is no statute which requires any fund to be set apart for indemnity for the protection of the executors. In my opinion the authorities only shew that it is necessary to do so where there is privity of estate.

"Then it is suggested (and I have not heard any good argument to the contrary) that the reason why, when there is privity of estate, something is set apart to protect the executors, is because the administration of the estate by the Court would not prevent an executor in possession of his testator's leaseholds from being sued as assignee under the lease. That does appear to be a ground for differentiating the one class of case from the other. To adopt a contrary view and to seek to indemnify the executors against possible future action on the part of the lessors, and to set apart such a sum as might be required for that purpose in an estate of this kind, would be, or might be, virtually, to lock up a very large fund for an indefinite number of years, really and truly only to preserve a fund in favor of persons who have no present claim. The lessors have not by virtue of their contracts between landlord and tenant bargained for any right to have property retained out of the testator's estate to answer future liabilities. I think, therefore, on the whole, that I am justified in saying that in a case like the present a fund ought not to be retained to the detriment of the beneficiaries under the will."   *   *

The rule laid down in the last case is cited with approval and followed in re *King*, L. R. 1 Ch. Div. (1907), pp. 72, 80.

It is therefore evident that the analogy sought to be established by the appellants between this case and the proceedings in the English Chancery Courts does not appear; on the contrary, no such practice ever did exist or now exists in those courts, and so could not have been "inherited" by the courts of this country, as urged by the appellants.

(2)     In view of the rule laid down in the case of *In re Nixon, supra*, to the effect that in order for a covenant for payment of future rent to be binding upon the executor, there must be privity of estate between the lessor and the executor, it is well to recall

for a moment the form of the covenant in the lease here. The lease perpetually demises to the lessees "their heirs and as-signs" the property described. The covenants read as follows: "and the said Thomas J. Emery and John J. Emery for them-selves their heirs and assigns do hereby covenant promise. and agree to and with the said Louisa F. Bowler her heirs and assigns that the said Thomas J. Emery and John J. Emery their heirs and assigns shall well and truly pay to the said Louisa F. Bowler her heirs and assigns "the rent as stated," with further covenants for "themselves their heirs and assigns" to pay taxes, levies and assessments, etc., to effect insurance. Nowhere does the word executors appear in the entire in-

(3) strument   This perpetual lease was made in Ohio, where all the parties then resided, and is to be governed as to its legal effect by the laws of Ohio, which provide in effect that such estates " shall be subject to the same laws of descent as es-tates in fee are subject to by the provisions of this chapter." (Sec. 4181, Ohio Statutes).

This estate therefore passed directly to Mrs. Emery as resi-duary devisee under her husband's will, and the executor took no interest whatever therein. It did not become assets in the hands of the executor, as in the case of the ordinary lease for years which is commonly made to executors, administrators and assigns, and never goes to the heir as such at all. We find then in this case that there never was any privity of estate between the lessor or her assigns (the appellants) and Mary M. Emery as *Executrix*: the privity that now exists is between the appel-lants as assigns of the original lessor and Mary M. Emery *as residuary devisee*, under the will and tenant under the lease. So that this case comes within the rule laid down *In re Nixon*, L. R. 1 Ch. Div. (1904) 646 (*supra*). No case is cited from Ohio where the question of the liability of the executor for payment of future rent is settled. Only two cases from Ohio are cited, viz.: *Taylor* v. *De Bus*, 31 O. St. 468, and *Smith* v. *Harrison*, 42 O. St. 180.

*Taylor* v. *DeBus* (*supra*) relates only to the liability of the original lessees under a perpetual lease (similar to the one here under consideration) to pay installments of rent which fell due

after the original lessees had assigned the lease. The liability of the personal representatives under the covenants is in no way involved, and is only referred to incidentally by the court. *Smith* v. *Harrison* (*supra*) is a similar case involving only the liability of the original lessee to pay the rent after he has assigned his term, and in no way touches the question of the liability of the executor.

The industry of counsel in this case has been such that we feel assured they would have referred us to other Ohio cases covering this point had such cases existed.

We are not, however, without authority on this point. It has been repeatedly decided in Pennsylvania, that a perpetual covenant to pay ground-rent does not survive against executors or administrators (although named in the covenant), except as to the rent which accrued in the life-time of the decedent, and that the rents which accrued subsequent to the death of the covenantor are not payable out of his personal estate.

In *Quain's Appeal*, 22 Pa. St. 510, the court says, p. 512: "Lowrie, J.—In the distribution of the estate of Andrew M. Quain, deceased, the Orphans' Court allowed a claim for thirty months' ground-rent of a lot granted to the decedent on perpetual lease, and which, on his death, descended to his heirs. One year of this rent became due in his life-time, and was properly charged. The question relating to that which accrued afterwards is not so plain.

"We are of the opinion that the principle of Torr's Estate, 2 *Rawle* 250, and also the principle of *Callahan* v. *Dickinson*, 19 *State R.* 227, exclude this part of the claim. Does a ground-rent covenant survive against executors and administrators ? In its usual form it binds heirs, executors, administrators, and assigns: but still this may be satisfied, as to executors and administrators, if they pay the rent which accrued in the decedent's lifetime.

"It is a perpetual covenant, and it is totally impracticable to require it to be performed by executors and administrators; for their office is not perpetual. If we retain the perpetuity of the covenant as against them, even with the restriction that

they are to be liable only when the resort to the land is ineffectual, we still prevent all distribution of the estate in their hands; and, as all the lands of the decedent are assets for the payment of debts, we constructively charge the rent of a single lot upon all his lands.

"Nor will it do to hold them liable until the final settlement of the estate. If that suggestion means until all other matters are ready to be settled, then it takes away at once the character of perpetuity belonging to the covenant, and makes its duration, as against the personal estate, to depend upon the accident of the administrator's diligence, or of the involved or simple nature of the estate. If it means until the final settlement of the whole estate, then this perpetual covenant postpones it for ever. This cannot be; for the law intends the office of executor or administrator to terminate as soon as possible. It cannot be prolonged on account of perpetual covenants.

"Such a prolongation, or such a liability, could not have been contemplated at the creation of the ground-rent. The grantor of the land cannot be presumed to have then placed any value on such a covenant; for the personal covenant of the original grantee is as nothing in a series of tenants lasting forever. The real security is the covenant running with the land and encumbering it; and this is the essential reliance of the owner of the rent. It is an absolute obligation, as against the administrators, or it does not bind them at all. Suppose it absolute; then the duty must be fully performed by perpetual payment, or else it must be discharged by a satisfaction or commutation; and in this latter case the rents would be discharged and the heir released, a result which is certainly unintended. It is a covenant payable, in the contemplation of the parties, out of the profits of the land; and it would be entirely unreasonable that the law should hold the administrator for the rent when it gives the land to the heir."

The doctrine of this case was considered and affirmed in *William's Appeal*, 47 Pa. St. 283, 289 *et seq;* although holding that, as the executor was named in the covenant, suit might be brought against him for subsequent breaches; but the re-

covery would be restricted to the land bound by the covenant. It therefore fully affirms the doctrine of *Quain's Appeal* that the personal estate of the covenantor is not liable.

(4)    We think the doctrine of these cases is fully applicable to the rights of the appellants under this lease; that the personal estate of the testator is not liable for future rent; and that the lessor or her assigns can only look to the land bound by the covenants, upon which a preferred lien is expressly reserved in the lease; and to the heirs and assigns of the lessee, hereafter, in case rent should remain unpaid in violation of the covenant.

If then, the executor as such, and through the executor, the personal estate is not liable, there is no ground for the application made by the appellants for the retention of assets by the executor, as claimed in these proceedings.

Furthermore, we are of the opinion that the future installments of rent which may become due and remain unpaid hereafter, do not constitute a "contingent claim against a deceased person," under § 922 C. P. A. All installments of rent due under the lease have been paid, and there has been no default under the lease up to the time of the hearing.

It will be noticed that the last clause of section 922, reads: "If upon examination it appears to the court that such claim may become justly due from the *estate,* the probate court shall order the executor or administrator to deposit in the registry of the court assets sufficient to satisfy such claim, or its proportionate share *in case of insolvency of the estate.*"

We have already seen that the claim here made cannot "become justly due from the *estate,*" but can only be maintained against "heirs and assigns," if it ever arises in the future. But it is also to be noted, that the statute provides for the "case of insolvency of the estate."

(5)    It has been repeatedly decided that rents to accrue cannot be proven against a bankrupt's estate under the right given in the Bankrupt Acts to prove "uncertain or contingent demands."

In *Deane* v. *Caldwell,* 127 Mass. 242, a claim was presented, in an insolvent estate, 1st, for rent due and unpaid at the time of the death of the intestate; 2nd, for damages (treating

the lease as broken at the time) estimated at the difference between the rent reserved and the value of the lease for the rent of the term; 3rd, if this claim for damages was not possible then for the rent due to the time of the presentation of the claim to the Commissioners and for damages for loss of rent.

The court, by the Hon. Horace Gray, C. J., said, p. 244: "Before the day at which rent is covenanted to be paid, it is in no sense a debt; it is neither *debitum* nor *solvendum*; for if the lessee is evicted before that day, it never becomes payable. *Bordman* v. *Osborn*, 23 Pick. 295. It is not within the provision of a bankrupt act, allowing 'uncertain or contingent demands' to be proved against the estate of a bankrupt; because it is not an existing demand the cause of action on which depends upon a contingency, but the very existence of the demand depends upon a contingency." See also, *Bosler* v. *Kuhn*, 8 W. & S. 183, 186; *Mills* v. *Auriol*, 1 Sm. L. C. pt. II. 1227; *Auriol* v. *Mills*, 4 Term Rep. (D. & E.) 94; *Savory* v. *Stocking*, 4 Cush. 607, 608, and *Riggin* v. *Magwire*, 15 Wall. 549, 551. And the same rule has been applied in cases of proofs of claim against receivers. *Fidelity &c. Company* v. *Armstrong*, 35 Fed. Rep. 567, and *Brown* v. *Schleier*, 112 Fed. Rep. 577, affirmed 118 Fed. Rep. 981.

We see no reason why the construction of the words "uncertain or contingent demands," used in the above cited statutes, is not equally applicable to the words "contingent claim" in our statute (Sec. 922 C. P. A.) Statutes of bankruptcy or insolvency are just as much intended for the speedy and certain administration of estates as are probate statutes. They are all intended to effect a speedy distribution of assets among those justly entitled thereto. Our statute, Sec. 922, is by its express terms applicable to insolvent as well as solvent estates; and it would be, in our opinion, impossible to so distinguish between "contingent" claims as to say that one class of claims might, within the provisions of the same section, be good as against a solvent estate, but could not be proved against an insolvent estate. The statute does not in terms make any such distinction and in our opinion no such distinction was intended or even thought of.

Another reason, in our opinion, why the claim for future rent to accrue under this lease cannot be classed as a "contingent claim" under our statute, is the practical impossibility of arriving at a just amount. It is true that the claim only asks for a sum sufficient to cover a term of seventy-five years. But the lease itself is perpetual and is renewable forever, and the covenants run with the lease so long as tenancy thereunder continues. There are also other covenants for repairs, for payment of taxes, levies and assessments, and for insurance, which run with the lease; so that all the covenants are or may be perpetual. If the appellants are entitled to protection for seventy-five years, they are equally entitled to it forever on all the other covenants as well as in the covenant for rent. But there is no certainty that any of the covenants will ever be broken. It is also uncertain whether or not the tenants may be evicted, through a paramount title, or by the exercise of the rights of eminent domain or in some other way, so that all their covenants may be discharged. It would be absolutely impracticable to fix any sum "that may be justly due," in respect of any of the covenants, either for rent, or for repairs, taxes, insurance, etc. In fact, the whole case presents, not a "contingent claim," but a mass of uncertainties, giving rise to mere *possibilities*, as to which no court can arrive at any just computation for the purpose of giving indemnity. And in this connection, as the lease expressly gives a preferred lien upon all the real estate and improvements, with right of entry and absolute annulment of the lease for any breach of any covenant, upon sixty days' default, it would be due to the laches of the appellants or their successors in title, if, in the future, any such accumulation of unpaid rent or damages for breach of other covenants should accrue, as would render the leasehold property inadequate as security. Certain cases arising under statutes of other states, relating to proof of contingent claims, have been cited by the appellee, *viz.*: *Clark* v. *Winchell*, 53 Vt. 408; *Hantzch* v. *Massolt*, 61 Minn. 361; *Kavanaugh* v. *Shaughnessy*, 41 Mo. App. 660; *Stichter* v. *Cox*, 52 Neb. 532. An examination of these cases shows that the provisions of the statutes are so different from ours, and the

questions raised are also so different from those in this case, that they afford little aid in the construction of our statute. So far as they go, they seem to be to the general effect that claims of this character are not "contingent claims" in the sense here contended for by the appellants.

(6)      Another and final reason why the petition of the appellants cannot be granted is that by the proceedings prior to the petition all of the assets of the Emery estate had passed over to and become the property of Mary M. Emery as residuary devisee, and were no longer subject to the control of the Probate Court.

By the terms of the will of Thomas J. Emery, Mary M. Emery was both executrix and residuary legatee, and the testator desired that "no bond be required." By the provisions of C. P. A. §1015, such a request only exempts the executor from giving surety, and the Probate Court may therefore under such a will accept the personal bond of the executor without surety; and this was accordingly done in this case.

After providing for the form of administration bond usually given by executors and administrators, C. P. A. §1013 provides as follows:

"Instead of the above bond an executor, if so authorized by the will, or if he be the residuary legatee thereunder, may give a bond to the Probate Court in a sum and with surety satisfactory to the court, and with condition to pay the funeral charges, debts, and legacies of the testator and such allowance as may be made by the court for the support of the widow and family of the testator. In such case an executor shall not be required to return an inventory, and an executor who is a residuary legatee need not render an account to the Probate Court."

Mrs. Emery, at the time of her appointment availed herself of the privileges of the above statute and on February 26, 1906, she executed a bond in the penal sum of $300,000 to the Probate Court of Middletown conditioned to pay the debts, legacies, allowances, etc., on the estate, "and to render upon oath, an account of her proceedings thereupon, when thereunto lawfully required," etc. It is to be noted that this latter

provision of the bond, relative to rendering an account, "when thereunto lawfully required," is absolutely nugatory, in this case, as the statute above quoted expressly relieves an executor who is also residuary legatee from rendering any account.

It is contended by the executrix that with the execution of the bond and its approval by the Probate Court, the estate was merged in the bond, and that thereafter the Probate Court had no further jurisdiction over the estate.

In *Adams* v. *Probate Court*, 26 R. I. 239, 244, the court, speaking of such bond, says: "An executor who is also residuary legatee may give bond to pay the funeral charges, debts, and legacies, and, having done this, he may take possession of the assets as his own property and dispose of them as he sees fit to his own use. He may pay the debts and legacies either out of the assets or out of his own estate. Neither the court nor the legatees are concerned with his management of the estate or with its fortunes, or can call him to account therefor after it passes into his hands. If losses occur, the executor must bear them. If the property increases in value, the profit is his. To all intents and purposes the bond stands in place of the estate." And on page 245, the court says further: "The nominal parties to this proceeding are the Probate Court and the executor, but the real parties in interest are the creditors of the estate and the legatees under the will on the one hand, and the executor and his surety on the other. If the executor chooses to give the ordinary bond, the creditors and the legatees have the right to demand an inventory of the estate and to be heard upon propositions to dispose of the assets and matters of management and administration generally. If the executor chooses to give bond to pay funeral charges, debts and legacies, none of the parties interested have anything to do with the executor except to enforce the obligations covered by his bond. The real parties interested in the choice which the executor should make on the 12th day of September, 1900" (the date on which the bond was made) "were the creditors and legatees and the executor, and neither the Probate Court, nor the creditors, nor the legatees had any right to dictate or control his choice. Their only right in the matter was to

see that the amount of the bond and surety were satisfactory."

In this case the complainant, having found after giving bond, that the estate was insolvent, asked leave to have a bond in ordinary form substituted *nunc pro tunc* for the bond to pay debts and legacies, so as to bring himself again within the jurisdiction of the Probate Court, so that he could file his inventory and account in order to administer the estate as insolvent; his request was refused. This decision shows conclusively that the Probate Court, after accepting a bond to pay debts, legacies, etc., has no further jurisdiction over the estate; except that it may possibly, under other provisions of the statute, require sureties to be given or may require increase of the bond or a new bond upon a proper case made. No such case is made here for the bond is for $300,000, the obligor is conceded to be amply solvent and responsible, and no suggestion is made that the amount of the bond is not ample; nor does this proceeding in any way relate to this bond.

The appellants, however, attempt to limit the effect of *Adams* v. *Probate Court* (*supra*) to a mere denial of the right of the executor "to change his mind" after having given bond to pay debts and legacies, and to substitute the ordinary bond, thus ignoring the broad grounds upon which the opinion is based. They have attempted to show that under a similar statute in Massachusetts and the decisions thereunder, the Probate Court does not lose jurisdiction upon the acceptance of such a bond.

The statute of Massachusetts relating to such bond (2 Rev. Laws, Mass. Chap. 149, § 2, p. 1,333) is as follows: "Sec. 2. If the executor of a will or an administrator with the will annexed is residuary legatee thereunder, and it appears that the bond required of him in the preceding section is not necessary for the protection of any person interested in the estate, the court may permit such executor or administrator with the will annexed, instead of giving such bond, to give bond in a sum and with sureties to the satisfaction of the court, and with condition to pay all debts and legacies of the testator and such amounts as may be allowed by the court to the widow or minor children for necessaries. In such case he shall not be required

to return an inventory. The giving of such bond shall not discharge the lien on the real property of the testator for the payment of his debts, except on such part as may be sold by his executor or administrator with the will annexed to a purchaser in good faith and for a valuable consideration; and all property not so sold may be taken on execution by a creditor not otherwise satisfied, in like manner as if a bond had been given in the other form."

This statute differs from that of Rhode Island in that the bond is optional with the court, and that the lien of creditors on real estate is not lost. But the provisions as to personal property remain the same.

In *Thayer* v. *Winchester*, 133 Mass. 447, which was an action brought by the widow of one of the devisees to vindicate her right of dower, the executor, who was residuary legatee, had given bond to pay the debts and legacies. The court afterwards granted leave to sell real estate and the widow of the devisee claimed that this was in violation of her right.

The court held that upon the giving of the bond, the real estate passed immediately to the devisee and that the decree of the Probate Court granting leave to sell real estate was beyond its jurisdiction and void. Speaking of the effect of the bond, the court says, on page 449: "The bond which a residuary legatee may give to pay debts and legacies, if the judge of probate permits, is a conclusive admission of assets for those purposes and the executor is not bound to return an inventory or an account to the Probate Court. It takes the place of the property in providing for the payment of debts and legacies, and is for the protection, not merely of all to whom they are immediately due, but of all who are legally interested that they shall be paid, and who are damnified if they are not so paid."

In a case decided in Massachusetts in 1782, *Divol, Adm.,* v. *Com'rs. of Lechmore,* 1 Dane's Abr. p. 574, § 2, it was held that the executor, having given bond to pay debts and legacies and having taken the estate of the testator into his hands and used it as his own, had administered on the estate, and the testa-

tors cattle, etc., had become the property of the executor, and so was changed.

The position taken in *Thayer* v. *Winchester* (*supra*) is supported by *Thompson* v. *Brown*, 16 Mass. 172 and *Clarke* v. *Tufts*, 5 Pick. 337, both holding, in effect, and as the ground of the decision, that an executor who is a residuary devisee, by giving bond in the probate office for the payment of all debts and legacies, acquires an absolute title in the estate devised, and of course may convey an indefeasible title to a *bona fide* purchaser.

*Alger* v. *Colwell*, 2 Gray, 404, simply decides that a bond of this character cannot be surrendered and cancelled, and supports the decision in *Adams* v. *Probate Court* (*supra*).

*Holden* v. *Fletcher*, 6 Cush. 235, relates solely to the application of the Statue of Limitation to a suit for damages against the executor for breach of the testator's covenant of warranty where the breach occurred more than four years after notice of appointment.

The case of *Jenkins* v. *Wood*, 134 Mass. 115, 140 Mass. 66, 144 Mass. 238, relates to a series of attempts to collect a balance of a debt due from the testator, in suits against the executor who had given bond to pay debts and legacies, and deals in the first instance with the Statute of Limitations; in the second instance, denying the right to maintain suit against the executor personally; and in the third instance, allowing recovery under a statute similar to our own (C. P. A. §§ 991 *et seq.*,) upon *scire facias* upon suggestion of waste.

*Bank* v. *Stanton*, 116 Mass. 435, deals with the question of the liability of an executor and residuary devisee, who, having given bond to pay debts, etc., and having failed to give bond in a larger sum, upon order of the Probate Court had been removed and an administrator *de bonis non* had been appointed. It was held that suit could not be further maintained against the original executor; that the administrator *de bonis non* might defend the action and interpose the defence of the Statute of Limitations, which would have been a good defence to either the executor or the administrator. The gist of the opinion was that the executrix might be lawfully removed for

failure to give the required bond. It does not deal at all with the question of what property was vested in her upon giving the original bond, and it expressly reserves the question of her liability upon that bond, if sued thereon.

None of the cases cited from Massachusetts, to any extent, disturb our conclusion that the Probate Court in this case, having accepted an ample bond to pay debts, legacies, etc., under our statute, has no further control over the assets of the estate, and no jurisdiction to require the executrix to make any such deposit in the registry of the court or to give any such bond as asked for in this proceeding. So far as the Massachusetts cases go, they fully support the doctrine of *Adams* v. *Probate Court, supra.*

For the reasons above set forth, the exceptions of the appellants are overruled, and the cause is remitted to the Superior Court for the county of Newport, with instruction to enter its decree dismissing the appeal, and to certify the same to the Probate Court of the town of Middletown.

*Hale and Grinnell,* for appellants

*William Paine Sheffield, Herbert Jenney, and Drausin Wulsin,* for appellee.