## In re HUTCHCRAFT.

(District Court, E. D. Kentucky, at Covington.   October 10, 1917.)

### No. 1055.

1. BANKRUPTCY ⬳320—PROVABLE DEBTS—CONTINGENT DEMANDS.
   Bankrupt was a director in a bank which had been placed in the hands of the state banking commissioner for liquidation, who had brought two suits against bankrupt and the other directors to charge them jointly and severally for misuse of funds of the bank. These suits were pending at the time of the proceedings in bankruptcy; the defendants denying liability. *Held*, that the claims of the commissioner were not provable debts against the bankrupt's estate, either by him or by the bankrupt's codirectors, because they were not fixed liabilities, absolutely owing, but were not only contingent, but the amount of the liability, if any, could not be ascertained until final distribution of the assets of the bank.

2. BANKRUPTCY ⬳320—PROVABLE DEBTS—UNLIQUIDATED CLAIMS.
   Bankruptcy Act July 1, 1898, c. 541, § 63b, 30 Stat. 562 (Comp. St. 1916, § 9647), authorizing the liquidation of unliquidated claims, applies only to claims provable under subdivision "a."

3. BANKRUPTCY ⬳320—PROVABLE DEBTS.
   The provision of Bankruptcy Act, § 63a (1), that a debt, to be provable, must be a "fixed liability   *   *   *   absolutely owing at the time of the filing of the petition," must be also read into subdivision (4), and applies to debts on open account or contract provable thereunder.

In Bankruptcy. In the matter of R. B. Hutchcraft, bankrupt. On review of orders of referee. Affirmed and remanded for further proceedings.

Dennis Dundon, of Paris, Ky., Geo. C. Webb, of Lexington, Ky., E. L. Worthington, of Maysville, Ky., and D. D. Cline, of Baton Rouge, La., for petitioners.

Robert C. Talbott, of Paris, Ky. (Geo. R. Hunt and D. Gray Falconer, both of Lexington, Ky., of counsel), for trustee.

COCHRAN, District Judge. This cause is before me on two petitions for review. One is filed by W. W. Mitchel, John Brennan, E. P. Claybrook, J. W. Bacon, and H. B. Clay. They complain of an order of the referee sustaining certain exceptions filed by the trustee to what is treated as proof of claims filed by them. The other is filed by the trustee. He complains of the refusal of the referee to sustain certain other exceptions filed by him. The adjudication was had on February 5, 1915. What is so treated consists of two papers. One is an affidavit of the petitioner Mitchel. The other is a petition by all the petitioners here. They were both filed February 4, 1916; i. e., within one year of the adjudication.

The bankrupt and the petitioners were directors of the George Alexander & Co. State Bank, located at Paris, Bourbon county, in this district. On May 19, 1914, the bank was placed in the hands of the banking commissioner of this state for the purpose of liquidating and settling its affairs. On July 8, 1914, the banking commissioner, for the benefit of the creditors of the bank, brought suit in the Bourbon cir-

cuit court against the directors thereof—i. e., the petitioners and the bankrupt—to recover $44,800 and interest on account of dividends declared and paid before the failure; and on February 25, 1915, he, for like benefit, brought suit against them to recover $71,844.64 and interest on account of divers and sundry loans made by the bank to its president with their knowledge and consent. The ground upon which it was sought therein to recover the sums so paid and loaned from the directors was that the payments and loans were made in violation of the provisions of the laws of this state relating to banks, and by section 598, Kentucky Statutes, it is provided that:

"If any director or directors of any bank shall knowingly violate * * * any of the provisions of the laws relating to banks, the directors so offending shall be jointly and severally individually liable to the creditors and stockholders for any loss or damage resulting from such violation."

[1] The claims of which the two papers referred to are treated as constituting the proof are these two claims of the banking commissioner against the bankrupt, asserted in these two suits. The petitioners assert the right to prove these claims because they are jointly liable with the bankrupt, and, if there is any recovery thereon, they will have a claim against the bankrupt for contribution. They do not admit any liability on account thereof. Indeed, they deny liability, and state that they are defending these suits. In their petition they seek a stay of further distribution of the bankrupt's estate until these claims are litigated and determined. Exceptions were not filed by the trustee to the claims until February, 1917. They may be reduced to two: That these claims were not provable debts; and that they were unliquidated, and that no application had been made for direction as to the manner of their liquidation, and it was too late for such an application. Thereafter—i. e., March 5, 1917, more than two years after the adjudication—the banking commissioner filed his affidavit setting forth these claims. He states therein the pendency of these two suits, that they are being resisted by the defendants therein, and that it cannot then be ascertained or stated for what amount, if any, he would be given judgment against them for the benefit of the creditors, for whose benefit the suits were being prosecuted.

The referee sustained the second and overruled the first exception. Thereupon the petitioners filed an application for a direction as to the manner of liquidation. The petitioners urge that the papers originally filed by them should have been treated as such an application, and that at any rate no limitation is prescribed by the Bankruptcy Act in which such an application may be made in order to the proof of debts. I do not find it necessary to determine the soundness of either of these positions, as I am clear that the first exception was well taken. The claims in question were not provable debts. They were not provable by the banking commissioner, and hence not by the petitioners. For a debt to be provable, it must come within section 63a of the bankrupt act.

[2] Section 63b does not cover debts not covered by section 63a. It simply covers debts so covered which are not liquidated, and provides for their liquidation. If the claims in question are within section

63a, it is because they are covered by clause (4); i. e., are debts founded "upon a contract express or implied." It is not claimed that they are otherwise within it. Possibly as, if they are valid claims, it is because of the statute, it cannot be truly said that they are founded upon contract. I do not find it necessary to determine this question. It is sufficient to say that, conceding that they were so founded, they were not "absolutely owing at the time of the filing of the petition in bankruptcy." They were contingent debts.

[3] It is expressly provided in clause (1) that the fixed liability to come therein must be so owing. And in the case of Colman Co. v. Withoft, 195 Fed. 250, 251, 115 C. C. A. 222, 223, it was said:

"It is held by the decided weight of authority that subdivisions 1 and 4 of section 63a of the Bankruptcy Act are in pari materia, and that the words 'absolutely owing at the time of the filing of the petition against him' are to be read into subdivision 4."

That contingent debts are not provable under the present act is an inference from the fact that provision was made in the act of 1841 (Act Aug. 19, 1841, c. 9, 5 Stat. 440) for the proof of "uncertain and contingent demands," and in the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) for the proof of "contingent debts and contingent liabilities," "if the contingency shall happen before the order for the final dividend," and "at any time" of the "present value" thereof "ascertained and liquidated" "in such manner as the court shall order," and that there is no such provision therein. Possibly, however, as under the act of 1841 the "uncertain and contingent demands" provable thereunder were limited to demands whose present value could be determined as held in Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232, and under the act of 1867 "the contingent debts and contingent liabilities" provable thereunder were limited to such debts and liabilities whose present value could be determined, to be inferred from the provision as to the proof of present value thereof, the provision in section 63b for the liquidation of unliquidated demands should be taken as evidence of an intent that contingent debts whose present value is capable of ascertainment are provable under the present act. But clearly contingent debts whose present value is not so capable are not provable thereunder. Section 57i (Comp. St. 1916, § 9641), and General Order 21, subdivision 4, which provides for the proof of claims by sureties or "persons contingently liable," lend no sanction to the position that contingent debts whose present value is not capable of ascertainment are provable thereunder. Those provisions have application to absolute claims against the bankrupt in favor of one person for which another may be contingently liable. They provide merely for the proof of such claims by such other person. In such cases the amount of the claim is known or ascertainable. Such was the case of Williams v. U. S. F. & G. Co., 236 U. S. 549, 35 Sup. Ct. 289, 59 L. Ed. 713. These provisions have no application to a case where the claim is contingent as to the creditor; i. e., where the amount due him is not capable of ascertainment because of a contingency. One who is contingently liable on such a claim can no more prove it than the creditor. 1 Remington on Bankruptcy, § 646, says:

"Where the principal debtor's liability is not a provable claim in favor of the creditor at the time of the principal debtor's bankruptcy, of course, it is not a provable claim in favor of the surety."

It remains, then, to make good that the claims of the creditors of the bankrupt or of the banking commissioner for their benefit are contingent claims, and not provable debts by them or him, and hence not provable by the petitioners on the ground that they are contingently liable therefor. In case of contingent claims, the contingency may go so far as to affect the possibility of any liability whatever. Such was the case of Riggin v. Magwire, supra. The question in that case was whether a grantee had a provable debt against the grantor in a deed containing a covenant that he had an indefeasible estate in fee, because the wife of an antecedent grantor had potential dower therein; she not having united in his deed and he being still alive. It was held that he had not, though the act of 1841, under which the case arose, made express provision for the proof of "uncertain and contingent demands." Whether the grantee would ever have any claim against his grantor depended on the question whether the wife of the antecedent grantor would survive him. It was there said:

"It is argued that, under the right" here given "to prove 'uncertain and contingent demands,' the claim * * * could have been proven. * * * But the better opinion is that, as long as it remains wholly uncertain whether a contract or engagement would ever give rise to an actual duty or liability, and there was no means of removing the uncertainty by calculation, such contract or engagement was not provable under the act of 1841."

But in case of contingent claims the contingency may go no further than affect the amount of liability, and yet they will not be provable if the amount of the liability is not capable of ascertainment. Such was the case of Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084. It was there held that an agreement by the bankrupt to pay an annuity to his wife "during her life or until she remarries" was not provable in bankruptcy, because the amount of the liability under the agreement was not capable of ascertainment. And it was there said:

"We do not think that by the use of the language in section 63a it was intended to permit proof of contingent debts or liabilities or demands the valuation or estimation of which it was substantially impossible to prove."

The cases where it has been held that rent to accrue under a lease after bankruptcy is not provable are of this character. Such are these: Watson v. Merrill, 136 Fed. 359, 69 C. C. A. 185, 69 L. R. A. 719.; In re Roth & Appel, 181 Fed. 667, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; Colman v. Withoft, supra. Particularly in point here are two decisions of Judge Lowell. They were rendered in the cases of In re Ells (D. C.) 98 Fed. 967, and In re Pettingill & Co. (D. C.) 137 Fed. 143. In the Ells Case the bankrupt was tenant under a lease which gave the landlord the right to re-enter and resume possession if the lessee should be "declared bankrupt or insolvent according to law," and the lessee covenanted that in case of such a termination of the lease he would "indemnify the lessor against all loss of rent or other payments which he may incur by reason of such termination during the residue of the term," and the lessor re-en-

tered upon the bankruptcy of the tenant. It was held that the land-
lord could not prove against the estate for the difference between the
letting value of the premises for the remainder of the term and the
stipulated rent for that period. In the Pettingill & Co. Case it was
held that the liability of a bankrupt on a guaranty executed by him
of the payment by a corporation of dividends at a certain rate on its
stock, owned by another, as to dividends not due or payable at the
time of the filing of the petition in bankruptcy, was not provable be-
cause the amount of liability was contingent. In referring therein to
the nonprovability of claims for rent to accrue after bankruptcy he
said:

"These claims are disallowed, not because they are not founded upon con-
tract, but because at the filing of the petition, the time when the status of a
claim is fixed, the damages arising from the breach of contract are so far
contingent that they cannot be computed by any process known to the law."

As to the case in hand he said:

"Where A. guarantees to B. the payment of dividends by a corporation
at a certain rate, and then repudiates the contract and disenables himself
from performing it, B. cannot recover as to future dividends, as for a breach
of an anticipatory contract, even under the broad rule laid down in Roehen v.
Horst. The case is nearer to Dunbar v. Dunbar, and a computation of dam-
ages is deemed too difficult by reason of the doubt of the corporation's action."

We come, then, to the case in hand. The liability here is disputed
by the bankrupt, and the petitioners, and it is a question whether there
will ever be any recovery on account of it. But this is not such a con-
tingency as is had in view by the rule that a contingent debt is not
provable in bankruptcy. There is such a contingency in the case of
every disputed debt asserted against a bankrupt. The contingency
there is whether, under facts existing at the time of the filing of the
petition in bankruptcy, it will be held that the bankrupt is liable. The
contingency had in view by the rule is one due to facts that may or
may not happen after the filing thereof. Here the liability of the
bankrupt and petitioners, if it should be held in the suit against them
that there is a liability at all, is not for the whole amounts paid out
and loaned, of which complaint is made, but only for any such loss
or damage as results to the creditors from the making of those pay-
ments and loans. Now, the extent of such loss or damage is depend-
ent on facts which were in the future at the time of the filing of the
petition herein, and which are still in the future. It is dependent on
how much will be realized from the assets of the bank for the cred-
itors. This depends on the extent of the indebtedness, the amount
which will be realized from the assets of the bank, and the expenses
of administration. It is now impossible to form an estimation as to
how much each creditor of the bank will receive from the assets of
the bank and when he will receive it, and hence how much loss or
damage will be sustained by reason of the payments and loans com-
plained of. This counsel for petitioners concede. They have this to
say in their brief:

"In his written opinion filed herein, the referee dwells much upon the
delay of the applicants to ask him, in so many words, to designate a tribunal
to liquidate the claim under consideration, until after he had ruled on the

exceptions to the claim, and on the hardship to the other creditors of the bankrupt in further holding up a distribution of the bankrupt's assets. As before stated, applicants did, in substance, in their original petition ask that the claim should be liquidated and its validity determined in the Bourbon circuit court, where suits were then pending for that purpose. There is nothing in this record to indicate that the applicants are responsible in any way for any delay in the Bourbon circuit court, or that the delay was either unnecessary or improper. So far as appears the delay may have been caused by the banking commissioner, or the creditors of the bank, in order to ascertain and be able to prove, in that court, the amount of their 'loss or damage.' It is difficult to see how any tribunal that might have been designated by the referee could have ascertained the amount of this loss or damage (i. e. liquidated this claim) until the assets of the bank had been converted into money and distributed to the creditors. No judicial tribunal would have allowed a jury to guess at the amount of this loss, until it could be ascertained after a settlement of the bank's affairs."

It therefore follows that the claims asserted by the petitioners are not provable debts herein. Though the referee ruled otherwise, it is not necessary to reverse his action on the trustee's petition for review. His action was not limited to so doing and to sustaining the other exception. He disallowed the claims because of the exception which he sustained. This action is affirmed, but it is placed upon the ground that the claims were not provable debts.

It should be noted, however, that what the petitioners really want is not an allowance now of these claims. They do not contend that they are entitled to an allowance thereof until the amount of them is ascertained. It is not until then that they can be really proven, so as to be allowed. What they really want is a stay of further distribution of the assets of the estate until their amount can be ascertained and proven as prayed for in their petition. A dividend has been declared and paid, and further funds are ready for distribution. It is likely that the entire estate will be ready for distribution long before the amount of these claims can be ascertained. Now I find nothing in the Bankruptcy Act authorizing the holding up of the distribution of the estate to await the proof of debts.

I have not found it necessary to give this question consideration. But the following cases would seem to be against the right so to do; In re Stein (D. C.) 94 Fed. 124; Matter of Bell Piano Co. (D. C.) 155 Fed. 272; Matter of Eldred (D. C.) 155 Fed. 686.

The cause is remanded for further proceedings pursuant hereto.